IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LOU GARDEN PRICE, SR.,                )<br>                                                           )<br>            Plaintiff,                         )<br>                                                           )<br>      v.                                              )<br>                                                           )<br> C/O LIEUTENANT TAYLOR, NURSE )<br> CAROL, NURSE KERA, WARDEN   )<br> TOM CARROLL, CORRECTIONAL  )<br> MEDICAL SERVICES, UNKNOWN  )<br> DEPARTMENT OF JUSTICE (DE)    )<br> STATE DETECTIVE 1, UNKNOWN  )<br> DEPARTMENT OF JUSTICE (DE)    )<br> STATE DETECTIVE 2, BETTY         )<br> BURRIS, MAJOR HOLMAN, CHRIS )<br> MALANEY, and PROFACI,              )<br>                                                           )<br>            Defendants.                     ) | Civ. No. 05-871-SLR<br><br>TRIAL BY JURY DEMANDED |

**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT,
CORRECTIONAL MEDICAL SERVICES, IN SUPPORT OF ITS
<u>MOTION TO DISMISS</u>**

Defendant, Correctional Medical Services, Inc., through its undersigned counsel, hereby respectfully moves this Honorable Court to enter the attached Order, dismissing plaintiff's Complaint with prejudice and, in support thereof, aver as follows:

**I.    STATEMENT OF FACTS AND PROCEDURAL POSTURE**

Plaintiff, a prisoner presently incarcerated at Delaware Correctional Center ("DCC"), filed a Complaint under 42 U.S.C. § 1983, on December 15, 2005. D.I. 2. Among others, named as defendants were Correctional Medical Services ("CMS"), Nurse Carol and Nurse Kera. CMS is a private corporation that has been providing medical care to Delaware inmates since July 1, 2005.[1]  Plaintiff asserts that on August 25, 2005, while incarcerated in Pennsylvania, he underwent a carpal tunnel surgery, which only "damaged [him] further." D.I. 2 at § IV (1).

---

[1] Prior to July 1, 2005, CMS had provided medical care to Delaware inmates from July 1, 2000 through June 30, 2002.

According to plaintiff, during his transfer from Pennsylvania to DCC, the "handcuffs had severely injured [his] wound/wrist…." D.I. 2 at § IV (2). Upon arrival to DCC on September 21, 2005, Nurse Carol "refused to give [him] prescribed meds" that had been sent with him from the other correctional facility. D.I. 2 at § IV (2). Specifically, Nurse Carol told the inmate that "he would have to be seen by a doctor, and sign up for sick call." D.I. 2 at Exhibit B. The inmate requested that the Court, among other things, compel an "emergency EMG so [he] can be scheduled for another carpal tunnel release surgery…[and] compel Dr. Yucha at Holy Spirit Hospital [to] re-do the surgery…even though he obviously made a mistake" D.I. 2 at § V (1)-(2).

A First Amended Complaint was filed on February 6, 2006. D.I. 11. Specifically, the "to alert the Court to the EMG that was done… [and] that an outside specialist determined permanent damage to his right hand…" in December. *Id.* By Memorandum Order dated March 1, 2006, this Court dismissed[2] the claims against CMS, as frivolous. D.I. 12.

On April 12, 2006, a Second Amended Complaint was filed by the inmate. D.I. 13. Under the listing of parties, among others, the inmate again lists CMS, along with Carol (Nurse) and "Kera" (Nurse) and DCC Medical Administrator, Chris Malaney. D.I. 13 at ¶¶ 6-7. The inmate explains that CMS is a "contracted medical provider", while Nurses Carol, Kera, and Ms. Malaney are employees of CMS.[3] The inmate further claims that a Nurse Carol, on September 21, 2005, refused to administer narcotic medication[4] that allegedly accompanied the prisoner during his transport from Camp Hill Pennsylvania to the DCC. D.I. 13 at ¶ 23, 31, 34 (a)-(b), 35 (a)-(c).[5] Throughout the Second Amended Complaint, plaintiff asserts that, in addition to a

---

[2] Without prejudice. D.I. 12.
[3] *Id.*
[4] Or was otherwise "indifferent" to the inmate's alleged medical condition.
[5] Throughout the Second Amended Complaint, plaintiff asserts that, in addition to a Nurse Carol, there was a Nurse Kera who deprived him of his constitutional rights. However, there are no specific facts, i.e., persons responsible, dates or conduct, detailing the alleged violations by Nurse Kera. Plaintiff generally asserts that from September 21, 2005 – October 6, 2005 Nurse Carol *and* Nurse Kera "blatantly refuse[ed] plaintiff medical treatment, and left him in pain while he was locked down in the Secured Housing Unit." D.I. 13 at ¶ 27.

Nurse Carol, there was a Nurse Kera who deprived him of his constitutional rights. As to Ms. Malaney[6], the only allegation was her "failure…to provide immediate examination…."[7] D.I. 13 at ¶ 42. The plaintiff-inmate alleges both constitutional violations and state law claims against CMS in the Second Amended Complaint. The State law allegations are founded in medical negligence, while the Eighth Amendment claims are, again, brought under 42 U.S.C. § 1983. This is CMS' Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff's Claims.

## II.   STANDARD OF REVIEW

A claim may be dismissed because it fails to allege sufficient facts to support a cognizable legal claim.[8] A complaint "must provide the defendants with fair notice of what plaintiff's claim is and the grounds upon which it rests."[9] Moreover, even a *pro se* litigant must plead sufficient facts to sustain a legal claim.[10] A motion to dismiss for failure to state a claim upon which relief can be granted should be awarded in the event that it is "beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[11] However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."[12]

A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations.[13] A defendant in a civil rights action must have personal involvement in the alleged wrongs.[14] Personal involvement is shown through allegations of personal direction or of actual knowledge and acquiescence of an employee's actions by someone

---

[6] At one time, Christine Malaney held a supervisory position for CMS: Health Services Administrator.
[7] Of course, in addition to her status as an employee of CMS. D.I. 13 at ¶ 7.
[8] Fed. R. Civ. P. 12 (b)(6).
[9] *United States v. City of Philadelphia*, 644 F.2d 187, 204 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).
[10] See *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).
[11] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).
[12] *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997).
[13] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(citing *Boykins v. Ambridge Area School Distr.*, 621 F.2d 75, 80 (3d Cir. 1980); *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir. 1978)).
[14] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)(citations omitted)

of authority within a corporation.[15] Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.[16]

## III. Legal Arguments

### A. THE INMATE FAILS TO STATE A CLAIM FOR MEDICAL NEGLIGENCE AND BREACH OF CONTRACT AGAINST CMS

Medical malpractice is a negligence action and is governed by the Delaware Health Care Negligence Insurance and Litigation Act (the "Act"). The Act defines medical negligence as: *any tort or breach of contract based on health care* or professional services rendered, or which should have been rendered, by a health care provider to a patient. The standard of skill and care required of every health care provider in rendering professional services or health care to a patient shall be that degree of skill and care ordinarily employed in the same or similar field of medicine as defendant, and the use of reasonable care and diligence.[17]

When a party alleges medical negligence, Delaware law requires the party to produce expert medical testimony detailing: "(1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury."[18] Specifically, the Act requires that any complaint alleging medical negligence be accompanied by "[a]n affidavit of merit as to each defendant signed by an expert witness, as defined in § 6854 of this title, and accompanied by a current curriculum vitae of the witness, stating that there are reasonable grounds to believe that there has been healthcare medical negligence committed by each defendant."[19] In addition, the Act directs the court to refuse to file and docket the complaint if is not accompanied by an expert affidavit.[20]

---

[15] *Id.*
[16] Id. (emphasis supplied).
[17] 18 *Del. C.* § 6801(7).
[18] *Bonesemo v. Nemours Foundation*, 253 F.Supp. 2d 801, 804 (D.Del. 2003)(quoting Green v. Weiner, 766 A.2d 492, 494-95 (Del. 2001)).
[19] 18 *Del. C.* § 6853.
[20] *Id.*

Here, Price alleges that CMS committed medical negligence and "breach of contract" through its nurses and medical personnel.[21] However, he did not include any affidavit of merit signed by an expert witness with his Second Amended Complaint. As such, this Court must dismiss Price's state law medical malpractice claims.[22]

### B. PLAINTIFF FAILS TO STATE A CLAIM FOR A CONSTITUTIONAL VIOLATION AGAINST CMS

In an Eighth Amendment violation for failure to provide adequate medical treatment to a prisoner, an act of a prison official becomes a constitutional violation only when it results from the "deliberate indifference to a prisoner's serious illness or injury."[23] Thus, *Estelle* requires plaintiffs to satisfy a two-prong test in order to impose liability under § 1983:   i) deliberate indifference on the part of prison officials; and ii) the prisoner's medical needs must be serious.[24] However, the *Estelle* Court has also clarified the standard in that:

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.[25]

The seriousness of a medical need may be demonstrated by showing that the need is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"[26] The acts complained of

---

[21] The Second Amended Complaint, D.I. 13, asserts breach of contract by CMS at ¶¶ 25, 28, 29,

[22] *See Jackson v. First Correctional Medical, Inc.* 380 F.Supp. 2d 387, 392 n.2 (D.Del. 2005)(citing 18 *Del. C.*§ 6853)

[23] *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

[24] *Id.*

[25] *Id.* at 105-06(citations omitted)(emphasis supplied).

[26] *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)(quoting *Pace v. Fauver,* 479 F.Supp. 456, 458 (D.N.J. 1979)).

must be accompanied by a "reckless disregard" of or "actual intent" to disregard a serious medical condition.[27] Thus, a defendant's conduct does not constitute a "deliberate indifference" unless it is alleged to occur in conjunction with the requisite mental state.

The only clearly identified contention in plaintiff's Second Amended Complaint is that on September 21, 2005, a Nurse Carol, an employee of CMS, refused to administer medications that allegedly accompanied the prisoner during his transport from Camp Hill Pennsylvania to the DCC. D.I. 13 at ¶ 23, 31, 34 (a)-(b), 35 (a)-(c). Specifically, Nurse Carol told the inmate that "he would have to be seen by a doctor, and sign up for sick call." D.I. 2 at Exhibit B. Even assuming its veracity, this alleged conduct does not rise to the level of a constitutional violation. Throughout the Second Amended Complaint, plaintiff asserts that, in addition to a Nurse Carol, there was a Nurse Kera who deprived him of his constitutional rights and was "deliberately indifferent". He further asserts that "Plaintiff's Eight Amendment rights were violated by CMS/medical staff for making him suffer… until December of 2005…." The court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding this motion to dismiss. As to Ms. Malaney, the only allegation against her was the alleged "failure…to provide immediate examination…."[28] D.I. 13 at ¶ 42. Plaintiff does not state any claim of personal involvement by Ms. Malaney.

Additionally, throughout his Second Amended Complaint, plaintiff alleges *negligent* medical treatment by various medical personnel. As *Estelle* explains, these are not cognizable claims under the Eighth Amendment. Mere medical malpractice does not give rise to a claim for an Eighth Amendment violation.[29]

Moreover, to state a claim against CMS, a private corporation rather than a person, a discrete standard applies. Assuming, *arguendo*, that plaintiff states a claim for an Eighth

---

[27] *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985).
[28] In addition to her status as an employee of CMS. D.I. 13 at ¶ 7.
[29] *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3rd Cir. 1993) .

Amendment violation against alleged CMS *employees*, plaintiff does not state a claim against CMS.

### 1. CMS cannot be held liable under a theory of *respondeat superior.*

Plaintiff's allegations against CMS in the Second Amended Complaint are grounded solely under a theory of *respondeat superior*. Under *Monell v. Department of Social Services of New York,* a municipality cannot be held liable under a theory of *respondeat superior*.[30] These principles likewise apply to the liability of private corporations offering health care services.[31] CMS cannot be held liable for a constitutional violation as an abstract entity.[32]

Here, the inmate claims that a Nurse Carol, on September 21, 2005, refused to administer medication[33] that allegedly accompanied the prisoner during his transport from Camp Hill Pennsylvania to the DCC. D.I. 13 at ¶ 23, 31, 34 (a)-(b), 35 (a)-(c).[34] Specifically, Nurse Carol told the inmate that "he would have to be seen by a doctor, and sign up for sick call." D.I. 2 at Exhibit B. Throughout the Second Amended Complaint, plaintiff asserts that, in addition to a Nurse Carol, there was a Nurse Kera who deprived him of his constitutional rights. However, there are no specific facts, i.e., persons responsible, dates or conduct, detailing the alleged violations by Nurse Kera. Plaintiff generally asserts that from September 21, 2005 – October 6, 2005 Nurse Carol *and* Nurse Kera "blatantly refuse[ed] plaintiff medical treatment, and left him in pain while he was locked down in the Secured Housing Unit." D.I. 13 at ¶ 27. Further, that "Plaintiff's Eight Amendment rights were violated by CMS/medical staff for making him

---

[30] 436 U.S. 658 (1978). *See also Heine v. Receiving Area Personnel*, 711 F.Supp. 178, 185 (D.Del. 1989) ("Traditional concepts of *respondeat superior* do not apply to civil rights actions brought pursuant to 42 U.S.C. § 1983.")

[31] *Miller v. Correctional Medical Systems, Inc.*, 802 F. Supp. 1126, 1132 (citing *Guyer v. Correctional Medical Systems, Inc.*, C. A. No. 86-361-JLL, Magistrate's Report and Recommendation, slip. op. at 3 (D. Del. Apr. 16, 1990)(adopted by final order May 14, 1990))

[32] *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1063 (3d Cir. 1991).

[33] Or was otherwise "indifferent" to the inmate's alleged medical condition.

[34] Throughout the Second Amended Complaint, plaintiff asserts that, in addition to a Nurse Carol, there was a Nurse Kera who deprived him of his constitutional rights. However, there are no specific facts, i.e., persons responsible, dates or conduct, detailing the alleged violations by Nurse Kera. Plaintiff generally asserts that from September 21, 2005 – October 6, 2005 Nurse Carol *and* Nurse Kera "blatantly refuse[ed] plaintiff medical treatment, and left him in pain while he was locked down in the Secured Housing Unit." D.I. 13 at ¶ 27.

suffer… until December of 2005…." D.I. 13 at ¶ 35. The inmate repeatedly asserts, directly and indirectly, the theory that the medical staff/individuals were "employed by CMS". D.I. 13 at ¶¶ 6, 7, 32, 35 (a-c). Since CMS cannot be liable under a theory of *respondeat superior*, CMS is entitled to dismissal of these claims against it.

### 2.  Plaintiff fails to assert a policy or custom of deliberate indifference to his serious medical needs.

Plaintiff fails to state a claim against CMS since he fails to even allege a policy or custom applied by CMS, nor does he allege that a CMS official, who has the power to make policy, is responsible for either i) an affirmative proclamation of a policy of deliberate indifference to his serious medical needs or ii) acquiescence in a well-settled custom of deliberate indifference to his serious medical needs.

While a municipality cannot be held liable under a theory of *respondeat superior*, it can be held liable for a policy or custom that demonstrates deliberate indifference.[35] "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict."[36] Specifically, municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered."[37] Second, only those officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability.[38] Third, whether a particular official has "final policymaking authority" is a question of state law.[39] Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy.[40]

---

[35] *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978).
[36] *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)(quoting *Pembaur v City of Cincinnati*, 475 U.S. 469, 481 (1986)).
[37] *Penbaur*, 475 U.S. at 480.
[38] *Id* at 483.
[39] *Id*.
[40] *Id*. at 482-483, and n.12.

In *St. Louis v. Praprotnik,* the Supreme Court made it clear that "the authority to make municipal policy is necessarily the authority to make *final* policy."[41] There can be no *de facto* final policymaking authority.[42] Moreover, "it is self-evident that official policies can only be adopted by those legally charged with doing so...[the Supreme Court] are aware of nothing in § 1983 or its legislative history…that would support the notion that unauthorized acts of subordinate employees are official policies because they may have the "potential" to become official policies or may be "perceived as" official policies.[43]

Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.[44] A single isolated incident…cannot establish an official policy or practice of the municipality sufficient to render it liable for damages under 1983.[45] In either instance, when a plaintiff alleges as unconstitutional policy or an unconstitutional custom, *a plaintiff must allege that the official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.*[46]

Plaintiff has not alleged a specific policy or custom of CMS that proximately caused deliberate indifference to his serious medical needs, nor identified any CMS official who has the power to make such a policy, nor articulated any facts that would tend to support a claim of "an official proclamation, policy or edict", nor any "well-settled and permanent course of conduct" by CMS.

---

[41] 485 U.S. 112, 127 (1987).
[42] *Id.* at 131. Arguably, under no circumstances could CMS be liable for a unconstitutional "policy".
[43] *Praprotnik*, 485 U.S. at 125.
[44] *Andrews*, 895 F.2d at 1480; *see also Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989) ("Custom may be established by proof of knowledge and acquiescence.").
[45] *Oklahoma City v. Tuttle*, 471 U.S. 808 (1988).
[46] *Andrews*, 895 F.2d at 1480.

## C. PLAINTIFF'S COMPLAINT AGAINST CORRECTIONAL MEDICAL SERVICES MUST BE DISMISSED PURSUANT TO FED. CT. CIV. R.12 (B) (6) BECAUSE THE PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

The Prison Litigation Reform Act of 1996 mandates a prisoner exhaust his administrative remedies prior to bringing an action pursuant to Section 1983.[47] 42 U.S.C. §1997e (a) provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available to him are exhausted.

"Prison conditions" have been defined to include the environment in which the prisoners live, the physical conditions of that environment and the nature of the services provided therein.[48]

The Delaware Department of Corrections has established administrative procedures that an inmate must follow to file a medical grievance.[49] An inmate must file a grievance with the Inmate Grievance Chairperson (IGC) who then forwards it to the medical staff for review. If action needs to be taken, the medical staff is required to attempt an informal resolution of the grievance with the inmate. If the grievance cannot be resolved informally, the grievance is forwarded to the Medical Grievance Committee to conduct a hearing. If the medical grievance hearing decision does not satisfy the inmate, the inmate may complete a Medical Grievance Committee Appeal Statement which is then submitted to the Bureau Grievance Officer.[50] The Bureau Grievance Officer will recommend a course of action to the Bureau Chief of Prisons, who renders the final decision.[51]

Plaintiff complains of prison conditions which under 42 U.S.C. §1997e(a) requires him to exhaust the administrative remedies available to him. Plaintiff claims that on 10/11/05 a *Medical*

---

[47] *Nyhuis v. Reno,* 204 F.3d 65, 67 (3rd Cir. 2000); *see also Booth v. Churner,* 206 F.3d 289, 294-95 (3d Cir. 2000) *cert. granted,* No. 99-1964, 2000 WL 798208 (Oct. 30, 2000) (§1997e (a) is applicable to all inmate claims except those challenging the fact or duration of confinement).
[48] *Booth,* 206 F.3d at 291.
[49] *Frink v. Williams*, 2005 U.S. Dist. LEXIS 21043 ( D.Del. 2005 (Exhibit "A").
[50] *Id.*
[51] *Id.*

Grievance was sent to Warden Tom Carroll, but it was "ignored". D.I. 13 at 39.[52] According to the inmate's Second Amended Complaint, his medical grievance concerning CMS was filed[53], but was never heard. Taking plaintiff's allegations as true, then, it is clear that plaintiff has not pursued his administrative remedies to a final decision, nor does he allege that he has done so.[54] At best, plaintiff has only met the first step of the IGP by filing a grievance. Therefore, plaintiff has failed to exhaust his administrative remedies prior to filing his action.[55]

42 U.S.C. §1997e (a) should be applied without exception to promote the policy behind the exhaustion requirement, which is to allow the Department of Corrections an opportunity to discover and correct mistakes and conserve judicial resources.[56] At the time this action was filed, several procedural steps remained under the Department of Corrections Inmate Grievance Procedure that were not completed, thereby obviating any opportunity to discover and correct any alleged mistakes, and wasting judicial resources. The need to exhaust administrative remedies is a necessary requirement to avoid wasting costly judicial resources. Therefore, plaintiff's Second Amended Complaint against CMS must be dismissed as he has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act of 1996.

### IV.  CONCLUSION

Based upon the foregoing, all claims against Defendant, Correctional Medical Services, should be dismissed pursuant to Federal Rule of Civil Procedure 12 (b)(6) for failure to state any claim upon which relief can be granted. Accordingly, Defendant, Correctional Medical Services, respectfully requests that the Motion to Dismiss filed contemporaneously herewith be granted, with prejudice.

---

[52] However, in the same Second Amended Complaint, plaintiff asserts that he was seen by Dr. Ott on October 6, 2005, D.I. 13 at ¶ 35(b), and was even sent for an outside consultation with Dr. Islam for an EMG in December, 2005. D.I. 13 at ¶ 35 (d).
[53] D.I. 2 at Exhibit B.
[54] See Frink, at Exhibit "A"
[55] Id.
[56] O'Neil v. Kearney, et al., C.A. No. 99-849-SLR, Memorandum Order (Robinson, J. November 6, 2000) (citing Nyhuis v. Reno, 204 F.3d 65, 75 (3rd Cir. 2000)).

                              MARSHALL, DENNEHEY, WARNER,
                              COLEMAN AND GOGGIN

BY:   /s/ Lorenza Anna Wolhar
        LORENZA A. WOLHAR, (DE ID # 3971)
        1220 N. Market Street, 5th Floor
        P.O. Box 8888
        Wilmington, DE  19899-8888
        (302) 552-4300
        Attorneys for Correctional Medical Services

Dated: September 20, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LOU GARDEN PRICE, SR., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   Civ. No. 05-871-SLR |
| | ) |
| C/O LIEUTENANT TAYLOR, NURSE | )   **TRIAL BY JURY DEMANDED** |
| CAROL, NURSE KERA, WARDEN | ) |
| TOM CARROLL, CORRECTIONAL | ) |
| MEDICAL SERVICES, UNKNOWN | ) |
| DEPARTMENT OF JUSTICE (DE) | ) |
| STATE DETECTIVE 1, UNKNOWN | ) |
| DEPARTMENT OF JUSTICE (DE) | ) |
| STATE DETECTIVE 2, BETTY | ) |
| BURRIS, MAJOR HOLMAN, CHRIS | ) |
| MALANEY, and PROFACI, | ) |
| | ) |
|     **Defendants.** | ) |

## CERTIFICATE OF SERVICE

    I hereby certify that on September 20, 2006, I electronically filed the Memorandum of Points and Authorities of Defendant, Correctional Medical Services, in Support of its Motion to Dismiss with the Clerk of Court using CM/ECF.

    I hereby certify that on September 20, 2006, I have mailed by United States Postal Service, the Memorandum of Points and Authorities of Defendant, Correctional Medical Services, in Support of its Motion to Dismiss to the following non-registered participant:

Lou Garden Price, Sr., SBI# 454309
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

                              MARSHALL, DENNEHEY, WARNER,
                              COLEMAN AND GOGGIN

              BY:   /s/ Lorenza Anna Wolhar
                         LORENZA A. WOLHAR, (DE ID # 3971)
                         1220 N. Market Street, 5th Floor
                         P.O. Box 8888
                         Wilmington, DE 19899-8888
                         (302) 552-4300
                         Attorneys for Correctional Medical Services