In The United States District Court
For The District Of Delaware

Lou G. Price, Sr.

    Plaintiff,

    V.

Lieutenant Taylor, Nurse
Carol, Nurse Kera, Warden
Tom Carroll, Correctional
Medical Services, Unknown
Department of Justice
State Detective #1, Unknown
Department of Justice State
Detective #2, Elizabeth "Betty"
Burris and Chris Malaney,

    Defendants.

Cv. No. 05-871-SLR

Jury Trial Requested

FILED

JAN 16 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD Scanned

Plaintiff's Answering Brief To Defendants
Motions To Dismiss Pending 42 U.S.C.
1983 Civil Action And Memorandum Of Law

COMES NOW, the Plaintiff Lou Garden
Price, Sr. (hereinafter "Price" or "Plaintiff")

1

by and through him filing as a pro se litigant, and hereby responds to Defendant's Motions To Dismiss. For the record, attorneys for Correctional Medical Services, Inc. (hereinafter "CMS") filed their Motion To Dismiss on September 20, 2006 and attorneys for the State Defendants filed same on October 19, 2006. ("State Defendants").

This is the Plaintiff's Answering Brief.

To commence, the Plaintiff strongly points out for the record that even though all of the Defendants seem to have some issues with Plaintiff's complaint he continues to stand firm on all of his assertions made prior to this Answering Brief, which he has selected to use to clarify things stated or not stated in the record before the Court.

I. <u>Arguments Stated Before The Court.</u>

Plaintiff has already successfully

stated his claims and requested a trial before a fact-finding jury. He has also basically demonstrated in his Second Amended Complaint genuine issues of material fact to The U.S. District Court for the District of Delaware in regard to his deliberate indifference/Eighth Amendment claims against CMS Defendants and DCC State Defendants. Their motions to dismiss are, at best, a mere formality and should be denied with prejudice.

 Defendants argue that Plaintiff failed "to state a claim for a constitutional violation against CMS," and that the Court need not credit a "complaint's bald assertions or legal conclusions when deciding their motion to dismiss." Plaintiff arrived at this point in litigation due to this Court permitting the claims he stated to stand up to being cognizable claims recognized by the Court. Thus, Federal Rule 8 (a)(2) requires only that a complaint include a "short and plain statement of the claim showing

3

that the pleader is entitled to relief."
Federal Rules of Civil Procedure 8(a)(2); <u>Leatherman</u>
<u>V. Tarrant County Narcotics Intelligence and</u>
<u>Coordination Unit 507 U.S. 163, 168, 113 S. Ct. 1160, 122</u>
<u>L.Ed. 2d 517 (1993)</u>. So Plaintiff need not set out
in detail all of the facts upon which
he bases his claim. Rule 8(a) requires only
that the complaint give the defendants
fair notice of what the claim is and
the grounds upon which it rests. <u>Leatherman</u>,
<u>507 U.S. at 168, 113 S. Ct. 1160</u>. Plaintiff in the instant
case repeatedly asserted that the Defendants
1). Injured him and 2). Denied him prompt and
effective treatment for his pain in his
grievances, appeals and in the section 1983
civil action.

Further, CMS seems to rely on established
law in <u>Estelle v. Gamble</u> which apparently explains
that negligent medical treatment are not cogniz-
able claims under the 8th Amendment. CMS
quotes it: "Mere medical malpractice does
not give rise to a claim for an 8th
Amendment violation." (CMS Motion To Dismiss at
6-8). Price differs due to the fact that CMS
took mere medical malpractice to an entirely
different level as he shall clarify. Price has,

as previously asserted, already succeeded in estab-
lishing both the Objective Component (re: cruel
conditions as outlined by the U.S. Supreme Court:
"unquestioned and serious deprivations of basic
human needs... the minimal civilized measure
of life's necessities" — see Rhodes v. Chapman 452
U.S. at 347); and Price has also plainly established
the Subjective Component in regards to both the
Defendants acting with deliberate Indifference.
It's all in Price's Second Amended Complaint.

   ★ The three Defendants (Taylor; the Two Unk.
Dept. of Justice State Detectives) who transferred
Price from Pennsylvania DOC to DCC, De. were
well aware of his post-operation status
because medication was sent by Price's
Doctors in Pa.-DOC; also Price was wearing
an ace bandage and a hand/wrist splint
which were doctor-ordered to protect
him from any damage. The splint was
confiscated. Any layperson would know from
the above two examples that there was
an existing situation that needed to be
handled carefully. The action taken by these
three escorts, in itself, gives rise to malicious-
ness and a sadistic-minded person... which
fits perfectly inside of the deliberate

5

indifference standard. Then, upon arrival to DCC, when Price complained to CMS employees of injury from his 3 plus hour ordeal they 1) failed/refused to treat him; they 2). denied Price his doctor-prescribed medication and 3). they left him to ~~suffer~~ (invoking a policy of DCC and CMS Plaintiff will explain later).

CMS attorneys argue that "the only clearly identified contention in plaintiff's Second Amended Complaint is that on September 21, 2005, a Nurse Carol, an employee of CMS, refused to administer medications that allegedly accompanied the prisoner..." [From Pa.-DOC to DCC, De.]. That, the Plaintiff contends, is merely the beginning of the complaint involving Nurse Carol, Nurse Kera, CMS and so forth. Price's complaint delves much deeper than that but well-settled law at the time of this conduct by the State Defendants and CMS, and it's employees, was outlawed throughout America, therefore unconstitutional.

The above stated Eighth Amendment claims fall well inside of the limits of

recognizable constitutional law and the definitions therein. The "deliberate indifference" standard heavily applies to this case as does the "serious deprivation of medical treatment" (i.e. the Subjective ; Objective Components). To be more specific, the deliberate indifference claim occured in clear conjunction with the "requisite mental state" of not only the three State Defendants but the employees of CMS as well. These Defendants acted maliciously and sadistically. In fact, the Plaintiff's case all but mirrors the [John Walker] case so Price will all but mirror what the 7th Circuit U.S. Court of Appeals determined in Walker and justifiably so. . . .

⟶ John Walker v. Dr. Ivy Benjamin, et al 293 F.3d. 1030 (June 18th, 2002).

★ Walker Complains that the Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment made applicable to the States by the Fourteenth Amendment. In particular, he alleges that they were deliberately indifferent to his

7

serious medical needs, and this indifference
caused him great pain and permanent
injury..." (Price alerted the Court—by his
Amended Complaint— that CMS had him
undergo an EMG exam apprx. 2½ months
after his arrival at DCC— in December
2005 which reflected permanent damage
to his right hand/wrist... Price stated
that a pre-surgical EMG—done in Pa-Doc—
did not reflect permanent damage. See
pages 12 and 13 of Second Amended
Complaint).

→ Back to Walker...

    Seeming as though CMS attorneys use
Estelle to drive home points in their
motion to dismiss, the Plaintiff will not
stray afar and neither will Walker v.
Benjamin (who also was in litigation for
a hand injury as well)...
    Walker states: "The Supreme Court
held in Estelle v. Gamble * 1037 that
deliberate indifference to serious medical
needs of prisoners constitutes the
unnecessary and wanton infliction of
pain proscribed by the 8th Amendment

and that such indifference may give rise
to a claim under Section 1983... However,
the standard for deliberate indifference
is satisfied by something less than acts
or omissions for the very purpose of
causing harm or with knowledge that
harm will result. (Haley v. Gross, 86 F.3d 630,
641 7th Cir 1996)... A prisoner claiming deliberate
indifference need not prove that the prison
officials intended, hoped for, or desired the
harm that transpired. (Haley, 86 F.3d at 641).
It is enough to show that the defendants
actually [knew] of a substantial risk of harm
to the inmate and acted or failed to act
in disregard of that risk. Id. [A Factfinder
may conclude that a prison official knew
of a substantial risk from the very fact
that the risk was obvious. (Farmer v. Brennan,
511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed. 2d 811 — (1994)..."

* The Price case reflects that. *

    Furthermore, Walker goes on, "... a
Plaintiff claiming an 8th Amendment violation
must show the defendants had actual
knowledge of the threat to the Plaintiff's

health or safety, the defendant's failure
to take reasonable measures, and the
defendant's subjective intent to harm or
deliberate indifference. Id. If there are
genuine issues of fact concerning those
elements a defendant may not avoid trial
on the grounds of qualified immunity." (State
Defendants plead that they are protected by the
doctrine of sovereign and qualified immunity...
See State Defendant's Answer To The Second
Amended Complaint at pg 13 (3)(4)(5)).
    * Price will assert numerous relevant
facts regarding the issue of immunity
later in this Brief for this Court's
review. *
        In the 7th Circuit Court's examination
of Walker's two fold claim that the
defendants caused him permanent injury
(like Price's permanent injury) when they
failed to appropriately treat his infection
and pain they determined (by a meticulous
analysis of the facts before them) that
Walker could not successfully "place verifying
medical evidence in the record to establish

the detrimental effect of the delay in
medical treatment" as required against a
"Dr. Ansari" who had "ordered further tests"
to determine the extent and precise nature
of the infection in his hand.

    With Price, however, CMS Nurse
Practitioner (who at the time Price believed
was the doctor he had "flagged down"
to come to his cell) had ordered further
tests which are now in the record.
So this NP, Sms. Sherell Ott was helpful which
is why Price did not claim that she
was involved in the harm done to him.
She is the one who ordered (or had
her supervisor order) the EMG to determine
the extent of his injury. Unfortunately,
the tests reflected permanent damage.
Fortunately Price was contacted by
Dr. Islam from CNMRI in Dover, De.
and he was able to have her mail
her medical findings to the district
Court of Delaware in May of 2006.
    So, Price has met the burden

of placing verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment outlined by the 7th Circuit in the 2002 Walker decision. *

---

→ 2. Defendant's Argue That They Cannot be held liable under a Theory of Respondent Superior... And That They Cannot Be Held Liable Since Plaintiff Fails To Assert A Policy or Custom Which Demonstrates Deliberate Indifference.

→ The Plaintiff strongly urges the Court to refer to all of the above points he made in Walker. Particularly Leatherman v. Tarrant and the 7th Circuit Court's determination after close analysis of the facts as required by the 8th Amendment. Specifically, the 7th Circuit Court pointed out in Walker:

"The district court declined to consider Walker's claim that the defendants were deliberately indifferent to his pain.

12

The district court noted that <u>Walker</u> failed to plead allegations related to post-surgical treatment of his pain, and the defendants were therefore not on notice that he was challenging this conduct. We disagree with the district court's analysis. Federal Rule 8(a)(2) requires only that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." (<u>Leatherman v. Tarrant</u> . . .). <u>Walker</u> thus need not set out in detail <u>all</u> of the facts upon which he bases his claim... We have reviewed Walker's complaint and find that [<u>he did</u>] adequately allege his claim regarding the treatment of his pain. <u>Walker</u> mentions the defendant's failure to treat his pain no fewer than ten times in his complaint, culminating in a claim that the defendants denied him "prompt and effective treatment for his pain... " That is more than sufficient notice of the nature of his claim against the defendants. <u>Walker</u> need not allege in his complaint the <u>dates</u> of the wrongful conduct or any

13

of the details. Such minutiae are properly left for discovery. The district court should have considered Walker's claims as they related to inadequate pain relief and we will consider them now." *

Plaintiff all but echoes this distinct analysis. Plaintiff does <u>not</u> premise his complaints under a theory of respondeat superior theory. Instead he is exercising his rights under the Constitution of the United States. If the Court makes specific orders to Plaintiff he shall comply, but a formal 1983 Complaint does not require every minute detail, name, and date to be included. That's a discovery issue.

For this record Plaintiff <u>will</u> assert that once he was turned over to the three gentlemen who facilitated the Pa-DOC to De.-DOC transfer he was no longer in Pa. DOC custody, he was in De.-DOC custody (but custody nonetheless). Once Price arrived at DCC and seen by Nurse Carol who he complained of pain to her — a <u>CMS</u> Nurse — who is there

For medical purposes, Nurse Carol was the official who had the power, control, responsibility, the duty and the <u>orders</u> to either provide the needed health care remedy or — if she for some reason could not — Nurse Carol was supposed to pick up the telephone, call her supervising Doctor or Head Nurse and request assistance. Instead she chose to follow what has become a more disturbing custom that CMS, it's nurses and doctors, etc., are now well-known for throughout America's prison system: Deliberate Indifference to the serious medical needs of prisoners who are at their mercy. Price is not or has not asserted any "<u>theory that the medical staff/individuals were employed by CMS.</u>" They were employed by CMS who <u>require</u> the nurses to follow a policy of deliberate indifference (which Plaintiff will later highlight). In this case CMS is not an "abstract entity"... And the CMS Defendants are attempting to disassociate themselves

From knowing Nurse Carol and Nurse Kera by the use of their language "a Nurse Carol" and "a Nurse Kera" which implies that these people are unknown before the Court. But Nurse Carol was acting in an official capacity for CMS as she was/is a CMS nurse and CMS has a contract with Delaware Doc's prisons to administer medical/health care to each and every person who's a prisoner of DCC including Lou Garden Price, Sr. who resides at DCC now and at the time of these incidents Price has filed claims for. In addition, Nurse Kera who's included in this claim is just as much at fault as Nurse Carol and CMS, Inc., (the contracted for-profit medical provider) because Kera (like Carol) was one of several nurses responsible for coming into the cell block areas of Building #21/SHU to administer medication to prisoners housed there. Both of these nurses refused to treat Price and left him to suffer in pain 24 hours around

16

the clock from September 21st, 2005 thru October 6th, 2005 respectively. Medication was given out at 3a.m. and 3p.m. and Price requested help from each nurse who came by at those times— namely Nurse Carol and Nurse Kera. Both were acting in official capacity for CMS and also in individual capacity (see page 3(6) where Price states that he is suing both Nurse Carol, Nurse Kera, Chris Malaney in their individual and official capacities).

Also, Defendants state that they cannot be held liable where Plaintiff failed to assert a policy or custom of deliberate indifference. The Defendants both operate hand in hand under the "Inmate Housing Rules" which is a policy of DCC and both CMS and DCC live/operate by it faithfully.

The Defendants are quick to point out that Plaintiff failed to even allege a policy or custom

17

applied by CMS. . . or that the liability
Price is alleging is not a basis for
liability for an action under 42 U.S.C. §
1983. (See State Def's §Motion To Dismiss pg 13 (14) re policy).

To be as brief as possible, the
Plaintiff made it clear in his complaints
what his claims were. And in so doing
he stated that Nurse Carol and Nurse
Kera "failed to provide Plaintiff with
emergency medical care" (pg. 15 & 16 in
Second Amended Complaint). The premise
Nurse Carol based the denial of care
(upon Plaintiff's entry into the facility)
were the well-settled Medical Services
And Sick-Call policy in Part VIII (A)
thru (D) of the Inmate Housing Rules
For Medium High Security which is applied
by CMS, and adhered to by its employees.
Nurse Carol denied Price treatment and
she refused to dispense his medication
and said something to the effect of
"you'll have to be seen by a doctor
and sign up for sick call" (quoting CMS'

18

Attorneys Motion, pg 7 ..."under A theory of Respondeat Superior"). Note: Attached Medical Rules "Exhibit A".

Plaintiff now takes this opportunity to urge the Court to immediately refer to his Second Amended Complaint on Page 17 (c)(1) where he specifically exposes the policy in place at Dcc, applied by CMS, where it states "... Cease turning a blind eye to prisoners who bring forward complaints of misuse of force and abuse and create a mandatory policy which forces CMS to examine any prisoner with a sickness or injury to be seen by the following a.m. after s/he submits a sick call request; this way his/her injuries will be recorded immediately instead of being concealed conspiratorily."

In a "Note" quickly following the above subject/Plaintiff writes:

"Note:" Emergency sick call [Policy] is only if anyone is bleeding, having a heart

19

attack, or cannot breathe. These are not the only "serious needs of prisoner's medical care" which fit into the 8th Amendment Definition... of Deliberate Indifference... or cruel and unusual punishment.

These are policies that are put into place by the Department of Corrections, CMS, and rarely do they deviate. In fact, it is safe to assert for the record that this policy has led to many prisoners suffering in pain and even led to unnecessary and deadly results.

— Rashes
— Insect/Spider Bites
— Sprained Ankles/Limbs
— SMigraine Headaches
— SNausea
— Vomiting
— Fever
— Joint/Arthritis Pain
— Sports-related accidents
— Flu
— Stomach Aches
— Food Allergies

- Diarrhoea
- Bad Colds
- Dizziness
- Blurred Vision
- Blood in Stool

The above is just some examples of some symptoms that prisoners in DCC have been forced to put in sick call slips for and had to suffer for several days or even weeks before being seen by medical. This is part of the inhumane prison condition embedded within the CMS applied sick call policy.

Price vehemently emphasizes that this is a part of what he went through and is still going through. The Medical Service/Sick call policy is a well-settled and applied custom of CMS here at DCC and it is sufficient to establish deliberate indifference. Price alleged the above in his complaint so the Defendants had notice of it. As such the Court should not

21

dismiss Price's complaint being that he properly brought it under 42 U.S.C. § 1983.

---

3. Failure To Exhaust All Administrative Remedies... And The Ongoing Retaliation And Deliberate Indifference of CMS And Its Employees.

Facts:

Price plainly stated in his original Complaint (pg #2) as well as in his Second Amended Complaint (pg # 14 at (38) and (39)) Followed the grievance process that was in place at that time. Price, in Fact Filed (2) grievances. One was given the Number #19394 and the other mysteriously vanished like legions of other prisoner's grievances. All one has to do is review Price's grievances as well as his appeal to Bureau Chief Paul Howard and the reviewer will see

22

how Fraudulent the IGC person/process is here at DCC. Inmates are strictly Forbidden to possess a copy of IGC procedures/policy at DCC because the administration is Fearful of prisoners Knowing how to Follow it. There's a clear pink notice on the notebook that states that its prohibited to be out of the eyesight of Security. Price, being in the SHU at the time, Followed the IGC process in place at the time and Filed a timely Grievance. Plaintiff attached as Exhibits the Following items to both the original complaint and the Second Amended Complaint For the Court record:

1). Grievance #19394 (which was wrongfully dismissed... Dated 9/27/2005).

2). Letter to SIP S. Ott (dated 10/25/2005).

3). Appeal For Grievance #19394 (dated 11/1/2005... 3 days after Price

received the "ignored" answer back).

4). Medical Grievance (dated 10/11/2005) which was filed and a copy given/ sent to Warden Tom Carroll which also went ignored.

The Plaintiff contends that he followed the administrative remedies that were made available to him. Since there is a hidden agenda of malfeasance within DCC/DOC/Medical Service policy rarely can anyone outside see it. If Price is wrong then he strongly urges the Court to challenge the Department of Correction to produce to the Court any document which was signed by Lou G. Price, Sr. where he was given an Inmate Handbook which included any sort of Knowledge about the Inmate Grievance Procedure. That would be a failing task. DCC would rather close it's doors than to expose the FACT that they actively work to conceal their IGC Procedure.

24

Keep in mind that Price had just entered De. Department of Corrections and placed in a segregated housing unit — injured and Delaware has a policy where they no longer provide free pens/paper and postal supplies of any kind with no exceptions.

Yet, CMS/Defendants point out:
"The Delaware Department of Corrections has established administrative procedures that an inmate must follow to file a medical grievance." Again, Price acknowledges that there is a procedure in place but that procedure is corrupt. Price made numerous efforts to use all of these so-called remedies which he has demonstrated. It is no secret that Dcc and CMS refuses to entertain (look at/process) a grievance they know a prisoner will use to file a monetary suit against them. Such grievances are rarely processed and subsequently denied.

Prisoners are prohibited from buying carbon paper to duplicate grievances, and other legal papers, so it will be easy for the IGC to discard a potential "threatening" grievance (which is why Price's medical grievance dated 10/11/2005 is not stamped "Received" by the grievance officer). Furthermore, neither will the law library make copies of grievances for prisoners. While not bearing any weight in law or fact the Court can at least get a gut feel of the games being played with prisoner's lives. There have been several inmate deaths over the last several years as a result of these wicked games. For the record, it is also known that the inmate medical grievances and hearings are highly biased and unfair because they go to CMS. This implies that the opportunity is not only there for CMS to correct problems— which is fair — but the opportunity is also there for them to craftily conceal

26

malfeasance and "doctor up" paperwork or wipe away proof of deliberate indiffer-ence claims.

## The News Journal's 6-Month Spread/ Investigation Into "Delaware's Deadly Prisons" And The Price Case

The Plaintiff had approximately (24) pages of the above news articles on the investigation into FCM and CMS' Fatal practices which he had sent to Mrs. Stacy Shane of Support Services For copies at 25¢ a piece. Price properly Filled out a "pay to" slip so he could pay the copy fee. Mr. T. Martin had specifically denied Price's request to copy them in the law library and directed him to send them to the Business Office/Stacy Shane For copying. Disturbingly, the clippings/articles were never returned; not even after Price wrote letters to Warden Carroll,

27

Ms. Shane's supervisor, Stacy Shane herself and finally he filed a grievance. Price's grievance disappeared.

Plaintiff had planned to use the news articles as evidence exhibits in this civil case. He next wrote to his counselor, Cindy Atallian, and he saved her letter which he is attaching as "Exhibit B" to this Brief. He has little proof as to this criminal act by Stacy Shane but he will take a lie detector test against a dismissal that he's being 100% truthful. Plaintiff is asserting for the Court record that the grievance procedure at DCC is corrupt. Period. There's just nothing to gain from fabricating a story like this.

CMS argues that they did not have a chance to render an informal resolution or decision because Price failed to exhaust administrative procedures. Again, Price reasserts that he has diligently followed exactly what DCC had in place to follow and there

28

is evidence before the Court that Price
did not deviate from those procedures. In
Fact evidence of malfeasance in the
Plaintiff's case can be seen in the
manner which his grievance was
denied (e.g. many grievances are denied
and returned to the grievant so
proof of the grievant even filing
it can later be denied in court
such as is the case here). The
Plaintiff points out the fact that
there are now motions before the
Court being considered and the Defendants
have full knowledge that Price's allegations
are true. Price strongly contends that
he has followed the "in place at the
time" IGC procedures which he has
already submitted proof of in earlier
documents. In addition Price points
out that there is no remedy in place
at DCC for grievances that go totally
ignored or unanswered — only for
"Decisions Made," Dismissals, Hearings
and the like. This is why Price has
learned to write out two copies

grievances and sick call slips, etc.
(see the Appeal/letter to Paul Howard in
Dover).

Price exhausted his administrative
remedies so he has the right to
bring action under Section 1983.

4. Immunity For State Defendants
And The Ongoing Practice of
Deliberate Indifference By CMS
And Its Employees

Walker states that "The Supreme
Court clarified in Estelle v. Gamble that
the unnecessary and wanton infliction of
pain is proscribed by the 8th Amendment.
The Court reasoned that deliberate indifference
to the serious medical needs of prisoners
Constitutes the unnecessary and wanton
infliction of pain and thus is proscribed
by the 8th Amendment: This is true whether
the indifference is manifested by prison
doctors in response to the prisoner's needs
or by prison guards in intentionally denying
or delaying access to medical care or

30

intentionally interfering with the treatment
once prescribed (like Nurse Carol refusing to
give Price medication prescribed by his
doctor in Pa. ... non-narcotic meds at that).
We have echoed this analysis. See Jones v.
Simek, 193 F.3d 485, 490 (7th Cir. 1999) (deprivation
of medical treatment necessary to preclude
severe pain and lost use of right arm
sufficiently serious to trigger Eighth Amendment
protections); Murphy v Walker 51 F.3d 714, 719 (7th Cir
1995) (prisoner suffering severe pain after
head injury who was told by guard to
"stop being a baby" and learn to live with
the pain was entitled to go forward with
a deliberate indifference claim against that
guard); Gutierrez, 111 F.3d at 1373 (Gutierrez v.
Peters 111 F.3d 1364, 1369 ... 7th Cir 1997) a refusal
to treat a medical condition marked by
the existence of chronic and substantial
pain may give rise to an 8th Amendment
claim). Nurse Dunbar's refusal to give Walker
his prescribed pain medication comes well
within the standards set forth in these
cases. Walker's injury was not trivial;
his infection was so severe as to
displace a bone and require emergency

31

(note : In Price's case there was an EMG done by Dr. Islam who determined <u>permanent damage in Price's wrist</u>. . . <u>CMS N.P. Sherell Ott ordered the test due to Price's complaints of pain</u>). . ."Walker's treating physician prescribed pain medication, and according to Walker's version of events, the nurse refused to dispense it, (<u>like the nurse in Price's case</u>). The same analysis applies to Dr. Benjamin who refused to give the prescribed pain medication. The fact that Nurse Dunbar and Dr. Benjamin may have based their refusal to treat Walker's pain on a good faith belief that he was malingering, that he was not in pain but was merely trying to get high with the narcotic pain killer, is an issue for the jury. See <u>Cooper v. Casey</u>, 97 F.3d 914, 917 (7th Cir 1996)(because pain is a uniquely subjective experience, a plaintiff need not produce objective evidence of injury in order to withstand summary judgment). <u>Walker</u> (like Price)" was not seeking an expensive or unconventional

treatment; he just wanted the pain medication that the prison doctor had prescribed for him. [The defendants deliberate refusal of it was a gratuitous cruelty..."] <u>Ralston V. Mc Govern</u>. His claim for the deliberately inadequate treatment of his severe pain thus survives summary judgment." ★

Price's claims require the same analysis and the same decision from the Court. Justice is especially required due to the fact that CMS is still indulging in outlawed conduct as if they are above the Law. Proof of that is in the fact that the U.S. Department of Justice has their company under investigation, numerous law suits are pending against them, The News Journal exposed some of their draconian practices, the proof is in my case and sadly, the proof is in the graveyard due to those who have died as a result of poor/inadequate health care and poor psychiatric care in De. DOC. This is why (again) Price's newspaper article — exhibits were confiscated by Stacy Shane (Support Services Secretary) but

33

all the Court has to do is go to
Delawareonline.com to retrieve all of
the articles Price is referring to — it's
not like this Court is unaware of
the ever-growing nationwide pattern
of prisoner deaths due to poor/
inadequate healthcare by CMS and
it's staff.

   Emphatic Denial of Any And All Immunity
requested By Defendants Based On The
Following:

   Plaintiff has established in his complaint
and throughout this answering brief cognizable
claims under the 8th Amendment which
is applicable by the 14th Amendment to
all the States. Price asserted genuine
issues of material fact which should
preclude summary judgment.

      1). Price's injury resulted in the
          denial of the minimal civilized
          measure of life's necessities.

34

2). Medical care context: the objective element of Price's medical need was so serious that an EMG reflected permanent damage in his hand/wrist;

3). Subjective Element; Price showed how defendants Taylor and both State Detectives and both Nurses Carol and Kera acted with a sufficiently culpable state of mind and how their decisions amounted to an unnecessary and wanton infliction of pain which is repugnant to the conscience of mankind.

4). State Defendants knew that harm would result and both CMS Nurses were deliberately indifferent to Price's pain and suffering because they were aware of the injury

35

done during transfer.

5). Price plainly demonstrated that prison officials/defendants, during transfer, knew of a substantial risk of harm to Price and how they acted in total disregard of the risk.

6). A factfinder (jury) would conclude that the Defendants would have known that the risk to a post-operative patient was as serious as it was obvious. This is why a jury trial needs to be conducted.

## Walker sums it up best:

1). In prisoner's action for deliberate indifference to his medical needs in violation of the Eighth Amendment, if there are genuine issues of fact concerning prison officials' actual knowledge of threat to prisoner's health or safety, officials' failure to take reasonable measures,

36

and officials' subjective intent to harm
or deliberate indifference, prison officials
may not avoid trial on the grounds
of qualified immunity.

2). Nor are the defendants entitled to
a finding of qualified immunity on
this claim. The general standard
for liability under the 8th Amend-
ment for refusal to treat a serious
medical condition was well-established
at the time of these events. Ralston
167 F.3d at 1162. Indeed, the application
of that standard to pain medication
was also well-established and reasonably
clear and definite at the time of
these events. Id. The purposes of
the doctrine of qualified immunity
is to shield public officers from
liability "consequent upon either a
change in law after they acted
or enduring legal uncertainty that
makes it difficult for the officer
to assess the lawfulness of the
act in question before he does
it." Id. There is no question here

that at the time Nurse Dunbar and
Dr. Benjamin refused to give Walker
*1041 his prescribed pain medication
(again, according to his version of
events), such an action would give
rise to liability under Section 1983.
We therefore reverse and remand
the district court's judgment in
Favor of Nurse Dunbar and Dr.
Benjamin on Walker's claim as it
relates to untreated pain, and remand
For proceedings consistent with
this opinion." End Walker.

Throughout this brief Price has
mirrored the Walker case with his
own. Price urges this Honorable Court
to carefully review his File and
complaint and take into consideration
his own claims and how the 7th
Circuit Court of Appeals handles Walker's
Claims as they pertain to the
above, (Price's claims/case).

38

As such, all of the above Defendants should be emphatically denied all immunity — qualified, sovereign or otherwise requested.

Defendant CMS' And State Defendant's Motion To Deny Plaintiff's Motion For Appointment of Counsel

Although both defendants have the right to File the above Motions, due to Plaintiff's position and lack of resources and research time, he points out that both Defendant's Motions are unfair and unreasonable.

Both Defendants are well aware of the ever-growing pattern of horrendous medical care within Delaware's Prisons and Correctional Medical Services nor DOC Staff are exempt From the current Federal Investigation by the United States Department

40

of Justice as well as the ACLU and other concerned citizens and organizations.

Price urges the Court to revisit his new Motion For Appointment of Counsel which has been Filed with the Court along with his Answering Brief and Motions For Discovery which, Price contends, are other reasons why BOTH Defendants are concerned with Appointment of Counsel. They wish to keep the truths buried because they Know that Price is being denied Law Library Access and Adequate Legal Assistance — both of which will weaken his case.

41

## Lt. Ramon Taylor:

"Ramon" Taylor is not the C.O. Plaintiff is referring to. Ramon Taylor is a <u>Black</u> man; the man Price was injured by is a white male who is a member of the CERT Team and does not work within the "walls" of this prison. Price specifically noted in his original complaint that Lt. Taylor was a "wht male." Discovery will uncover this fact since it's being hidden.

Price didn't say that it was Ramon Taylor — Defendants

42

did (State Defendants). (Pg 2 (4)).

State Defendants Defenses And
Affirmative Defenses Are Baseless.

(Pg 13 $\frac{1}{2}$ 14 of Motion To Dismiss)

(1) Plaintiff has stated 8th Amendment claims against them.

(2) The 11th Amendment, in this case, does not give Defendants immunity, (as Plaintiff has previously asserted).

(6) Plaintiff's claims are not based under a theory of Respondeat Superior.

(7) Plaintiff's complaint was properly brought under Section 1983.

(8) Plaintiff has exhausted his administrative remedies within the meaning of the PLRA $\frac{1}{2}$ 42 U.S.C § 1997 a(e) so there is NO time limitation violation) bar.

43

(10) Plaintiff stated (although plainly) how each Defendant was personally involved in depriving Price of his 8th Amendment Rights so he need not go into every detail unless this Hon. Court Orders him to clarify.

(11) Price did not contribute to any form of what happened to him.

(12) Plaintiff has stated a cause of action under section 1983.

(13) The medical/DOC applied sick call policy is unconstitutional as Price has implied previously.

(14) Price stated a claim under the 8th Amendment previously as well as in this Brief.

(15) Defendants acknowledge that there was injury which existed prior to any wrong conduct by State Defendants.

44

16, 17, 18, 19, 20 lack any factual basis that needs a response.

---

Wherefore, the Plaintiff respectfully requests this Honorable Court to grant judgment in his favor against the Defendants in all respects and enter an Order granting a trial by jury.

Thank You.

Lou Garden Price, Sr — DCC
Pro Se

Dated: 1/12/07

45

I/M Lou G. Price, Sr
SBI# 454309 UNIT 23
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



05-871-SLR
U.S. District Court
844 N. King St
Lockbox 18
Wilmington, De
   19801-3570





U.S.M.S.
X-RAY