IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LOU GARDEN PRICE, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 05-871-SLR |
| ) | |
| CORRECTIONAL MEDICAL ) | |
| SERVICES, DCC WARDEN ) | |
| TOM CARROLL, C.O. ) | |
| LIEUTENANT TAYLOR, ) | |
| CAROLE KOZAK, MARK ) | |
| FORBES, ROBERT DURNAN, ) | |
| CHRIS MALANEY, BETTY ) | |
| BURRIS ) | |
| ) | |
| Defendants. ) | |

Lou Garden Price, Sr., Delaware Correctional Center, Smyrna, Delaware, Pro se Plaintiff.

Lorenza Anna Wohlar, Esquire, of Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware. Counsel for Defendant Correctional Medical Services.

**MEMORANDUM OPINION**

Dated: July 3, 2007
Wilmington, Delaware

*[signature]*
ROBINSON, Judge

## I. INTRODUCTION

On April 12, 2006, Lou Price, Sr. ("plaintiff"), a pro se plaintiff proceeding in forma pauperis, filed the present action against Correctional Medical Services ("CMS"); Tom Carroll ("Carroll"), the Warden of Delaware Correctional Center ("DCC"); C.O. Lieutenant Taylor ("Taylor"); "Nurse Carol[e]" and "Nurse Kera," who worked for CMS; and unidentified "State Detectives at [Department] of Justice (Delaware)." (D.I. 2) Plaintiff amended his complaint on February 6, 2006 (D.I. 11); subsequently, on March 2, 2006, the court dismissed without prejudice plaintiff's claim against CMS. (D.I. 12)

Plaintiff filed a second amended complaint on April 12, 2006, adding the following defendants: CMS-DCC Medical Administrator Chris Malaney ("Malaney"); DCC Operational Manager Betty Burris ("Burris"); C.O. Staff Lieutenant Profaci ("Profaci"); Major Holman ("Holman"); and two "Unknown/John Doe Department of Justice (DE) State Detective[s] ("the John Doe Detectives"), presumably the same individuals originally identified as "State Detectives at [Department] of Justice (Delaware)." (D.I. 13) On June 6, 2006, the court issued a memorandum order dismissing plaintiff's claims against Holman and Profaci. (D.I. 15 at 5) On May 11, 2007, the complaint was amended to reflect the following name changes: Nurse Carole was identified as Carole Kozak ("Kozak"), and the John Doe Detectives were identified as Mark Forbes ("Forbes") and Robert Durnan ("Durnan"). (D.I. 13) Therefore, at present, CMS, Carroll, Taylor, Kozak, Nurse Kera, Melaney, Burris, Forbes, and Durnan (hereinafter, "defendants") are the remaining defendants in the action at bar.[1]

---

[1] Plaintiff is suing defendants in both their individual and official capacities.

Plaintiff's amended complaint alleges excessive use of force in violation of the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983; plaintiff also alleges, under the laws of the State of Delaware, the torts of negligence, assault, and battery. Regarding the constitutional claims, plaintiff contends that Taylor, Forbes, and Durnan unnecessarily aggravated his post-surgical wrist injuries during a transfer from Pennsylvania Department of Corrections ("PDOC") custody into Delaware DOC ("DDOC") custody. (Id. at 12) In addition, plaintiff contends that Kozak and Nurse Kera, both employed by CMS: (1) intentionally failed to administer doctor-prescribed pain-killer medications upon plaintiff's arrival at DCC; and (2) failed to provide plaintiff prompt medical treatment at DCC, despite their knowledge that he was suffering. (Id.) Plaintiff requests injunctive relief in the form of the timely reexamination of his wrist, including any necessary surgery or physical treatment. (Id. at 16) Plaintiff also requests an injunction compelling a mandatory DCC policy requiring CMS to examine any prisoner with a sickness or injury by the morning after the prisoner submits his or her sick call request. (Id.) Finally, plaintiff requests compensatory and punitive damages from multiple defendants totaling $410,000. (Id.) The court has jurisdiction over the suit at bar pursuant to 42 U.S.C. §§ 1331(a) and 1343. The court has supplemental jurisdiction over the plaintiff's state law tort claims pursuant to 28 U.S.C. § 1367. Presently before the court is CMS's motion to dismiss for failure to state a claim upon which relief may be granted (D.I. 27) and plaintiff's motions to appoint counsel (D.I. 37, 50). For the reasons that follow, the court denies the motions.

## II. BACKGROUND

On August 25, 2005, while under PDOC custody, plaintiff had carpal tunnel surgery on his wrists. (D.I. 13 at 5) Plaintiff contends that on September 21, 2005, his wrists were permanently damaged as a result of being tightly handcuffed during his transfer from PDOC custody to DDOC custody at DCC. (Id.) Despite plaintiff's protests, the transport officers removed a protective brace that plaintiff had received after surgery and proceeded to lock the handcuffs "extremely tight." (Id.) A "black box" was placed over/around the handcuff chain, which applied an "agonizing amount of pressure" directly on top of plaintiff's healing wrists. (Id.)

Plaintiff alleges that upon arrival at DCC, Kozak and Nurse Kera intentionally failed to administer doctor-prescribed painkiller medication which plaintiff had received after his carpal tunnel surgery. (Id. at 12) Plaintiff also claims that the two CMS nurses, knowing that he was suffering, refused him prompt medical treatment from September 21, 2005 (when he arrived at DCC) until October 6, 2005, when he finally saw a doctor. (Id.) When defendant did see a doctor, painkillers were again prescribed for him. (Id.) In December of 2005, plaintiff was brought to an outside specialist and given an EMG which showed permanent damage to his wrists. (Id. at 7) Kozak justified the lack of immediate care by asserting that she was following the Medical Services and Sick-Call Policy ("sick-call policy") in part VIII (A)-(D) of the Inmate Housing Rules for Medium High Security ("Inmate Housing Code"). (D.I. 51 at 18) According to plaintiff, the Inmate Housing Code provides emergency sick call rights only if an inmate is bleeding, having a heart attack, or cannot breathe properly. (Id. at 19-20)

Plaintiff contends that the sick-call policy promulgates frequent cruel and unusual

3

punishment by denying multiple prisoners immediate medical care simply because they are not bleeding, having a heart attack, or having trouble breathing. (Id.) More specifically, plaintiff points out that this policy resulted in his suffering excruciating pain for weeks without a physician's care. (Id.) Plaintiff also asserts that the Inmate Housing Code, and specifically the sick-call policy within, constitute both a CMS policy that amounts to cruel and unusual punishment in violation of the Eighth Amendment and a custom of deliberate indifference to serious medical needs.[2] (Id. at 17-22)

Plaintiff states that he filed a grievance on September 27, 2005, which was "mistakenly" dismissed due to not having been filed before a seven-day expiration period. (Id. at 24) On October 1, 2005, plaintiff sent an appeal to Mr. Paul Howard, Bureau Chief of DOCS; plaintiff claims his appeal was ignored. (Id.) A separate medical grievance was also allegedly sent to Warden Carroll and was also ignored. (Id.) Despite CMS's allegations that plaintiff did not properly exhaust the internal grievance procedures within DCC, plaintiff contends both that he followed all available administrative remedies available to him and that the entire internal DCC grievance procedure is corrupt. (Id. at 22-26)

## III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage

---

[2]The entire policy does not appear before the court. Rather, plaintiff quotes relevant portions of the Inmate Housing Code within his amended complaint and answering brief.

4

Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, [however,] and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations omitted).

## IV. DISCUSSION

CMS asserts that plaintiff has no valid constitutional claims against it because plaintiff has failed to show deliberate indifference to a serious medical need or to provide a specific policy or custom that would render CMS liable. (D.I. 28 at 5-9) CMS also claims that plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. §1997e(a). (Id. at 10) Finally, CMS argues that plaintiff's state tort claims must be dismissed because plaintiff did not include an expert's signed affidavit with his amended complaint, as Delaware law requires. (Id. at 4); 18 Del. C. § 6854.

To state a violation of the Eighth Amendment right to adequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate

5

indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); accord White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). Plaintiff must demonstrate that: (1) he had a serious medical need; and (2) the defendant was aware of this need and was deliberately indifferent to it. See West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978); see also Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987). Either actual intent or recklessness will afford an adequate basis to show deliberate indifference. See Estelle, 429 U.S. at 105.

The seriousness of a medical need may be demonstrated by showing that the need is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979)). Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Id. Plaintiff alleges that the refusal of prompt medical care by CMS employees following CMS policy was, or could have been, partially responsible for the permanent damage to his wrists that was independently verified by an outside doctor administering an EMG. (D.I. 13 at 12) Furthermore, plaintiff alleges that the seriousness of his medical need was so obvious, from the condition he arrived in, his description of the events to the CMS nurses, and from the obvious pain he was under for a period of weeks, that any lay person would recognize the need for a doctor. (Id.)

As to the second requirement, an official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects

6

the inmate to undue suffering or a threat of tangible residual injury. See Monmouth, 834 F.2d at 346. Deliberate indifference may also be present if necessary medical treatment is delayed for non-medical reasons, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment. See id. at 347. However, an official's conduct does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Specifically, "the official [must] know ... of and disregard . . . an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). While a plaintiff must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the official had knowledge of the risk through circumstantial evidence and "a fact finder may conclude that a[n] ... official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842. Plaintiff alleges that, even if the substantial risk was not obvious from sight alone, he repeatedly pleaded to the nurses, who deliberately denied him care. (D.I. 13 at 12) The court concludes that plaintiff has met the requirements necessary to withstand dismissal under Fed. R. Civ. P. 12(b)(6).

CMS contests whether, for § 1983 purposes, the actions of CMS employees can be attributed to CMS itself. CMS cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978). In order for CMS to be liable, plaintiff must provide evidence that there was a relevant CMS policy or custom, and that the policy caused the constitutional violation they allege. See Bd. of County Comm'rs

7

of Bryan County, Okla. v. Brown, 520 U.S. 397, 404 (1997). Plaintiff has pointed to a specific CMS policy, namely the Inmate Housing Code, which the nurses were following when they initially denied plaintiff care, causing the alleged constitutional violation and two weeks of intense suffering. (D.I. 51 at 18) At this early stage of the proceedings, plaintiff has successfully stated a claim that requires CMS to remain a party.

The court is unpersuaded by CMS's assertion that plaintiff did not sufficiently exhaust internal administrative remedies before bringing suit. Before filing a civil action, a plaintiff-inmate must exhaust his administrative remedies, even if the ultimate relief sought is not available through the administrative process. See Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000), aff'd, 121 S. Ct. 1819 (2001). See also Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (stating that § 1997 "specifically mandates that inmate-plaintiffs exhaust their available administrative remedies"). Plaintiff filed separate grievance forms with three different parties, which convinces the court that plaintiff has either exhausted administrative remedies or done so to the best of his ability. (D.I. 51 at 14) Defendants have not presented evidence showing any response to any of the grievance forms, as mandated by the grievance procedure itself. On this record, the court declines to find that plaintiff failed to exhaust his administrative remedies.

The court denies without prejudice the plaintiff's motion for counsel at this time. A pro se litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel. See Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981); Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). It is within the court's discretion, however, to seek representation by counsel for plaintiff, but this effort is

made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting ... from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984); accord Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993) (representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law). At this time, the court believes that plaintiff has been capably representing himself, and sees no special circumstances requiring the appointment of counsel.

## V. CONCLUSION

The court denies CMS's 12(b)(6) motion for failure to state a claim.[3] The court denies without prejudice plaintiff's motion for counsel. An appropriate order shall issue.

---

[3]Plaintiff's state law tort claims are bifurcated and stayed until further order of the court.

9