In The United States District Cort For The District
Of Delaware

Lou G. Price, Sr.
      Plaintiff,

    V.

C.O. Lt. Taylor et al.,
    Defendants.

C.A. No. 05-871-SLR

Jury Trial Requested

FILED

JUL 17 2007

SUE L. ROBINSON
U.S. DISTRICT JUDGE

## Plaintiff's Motion For Summary Judgment

Pursuant to Rule 56 of the Federal Rules of
Civil Procedure, plaintiff Lou Garden Price requests
this Court to grant him summary judgment
as to the liability of defendants Correctional
Medical Services, Inc. ("CMS"); Nurse Carole Kozak;
Nurse Kera; Warden Tom Carroll; Operational Manager-
Deputy Warden Elizabeth "Betty" Burris; C.O. Lieutenant
Taylor; State Detectives Mark Forbes; and Robert
Durnan; and Chris Malaney, For damages
For denial of medical care, delay of medical

care, and deliberate indifference towards the serious medical needs of a prisoner. The reasons therefore are set forth in the plaintiff's affidavit and brief in support of the motion, for these Eighth Amendment violations.

Respectfully Submitted

Lou G. Price, Sr.

_____
Pro Se

July 8th, 2007

Lou G. Price, Sr.
Dcc - Smyrna
1181 Paddock Rd.
Smyrna, De 19977

In The United States District Court For The District
Of Delaware

Lou G. Price, Sr.
        Plaintiff,                    C.A. No. 05-871-SLR

    V.                                Jury Trial Requested

C.O. Lt. Taylor, et al,

— — — — — — — —

Declaration In Support of Plaintiff's Motion For Summary
                    Judgment

        Lou Garden Price, Sr. hereby declares under
penalty of perjury:

        1. I am the plaintiff in this case. The
Complaint alleges that I was excessively restrained
which is abusive/assaultive behavior in and of itself
but what's even more remarkable is that the three
officers who transferred me all knew that I had
recently undergone carpal tunnel surgery just weeks
earlier. So their unprovoked sadistic acts rose straight
to the level of deliberate indifference towards
my medical needs. Not coming prepared with

3

alternative method(s) of restraint is not a
green light or some sort of Executive permission
to assault or abuse a prisoner. This is my declaration
in support of my motion for summary judgment.

2. I was being held on a 4 to 10 year
sentence in PDOC'S SCI - Camp Hill prison. Due
to my parole status I was released into
DDOC custody. The transfer took place Wednesday,
September 21, 2005... three and a half weeks
<u>after</u> my August 25, 2005 CTS surgery. (Carpal Tunnel)

3. On September 21, 2005, as set forth in
my second amended complaint, I was hand-
cuffed extremely tight, a black box was placed
over the handcuffs chain, a chain was placed
around my waist and connected to the
handcuffs via a "loop" that fastened through the
black box and the chain was pulled tight
and the slack was locked with a master
lock and on top of that a 50,000 volt stun
belt was placed around me and secured to
my wrists with <u>velcro</u> strap handcuffs. C.O.
Lieutenant Taylor, Mark Forbes and Robert Durnan
all took part in this event. (<u>Exhibit 1</u> reflects names of
transferring State Detectives).

4. I complained when C.O. Lt. Taylor
confiscated my protective wrist splint/brace

4

away from me and I explained the recent surgery, my pain, and the current pain meds I was on, and finally why the Camp Hill doctor had prescribed the brace. He refused to give it back or listen to my pleas. (See a copy of my 537-A "Confiscated Property" Form where it lists the property taken from me by the transferring officers and given to DCC property officers). (Exhibit 2).

4. I was standing right there when the Camp Hill window clerk handed the transferring officers my medical file/information including a standard sized white envelope which contained smaller envelopes marked with the types of meds inside of them. (See Exhibit 3 which reflects that medicine was sent with me among other info).

5. During the entire trip I complained that I was in pain, my hands/fingers were numb and I squirmed around alot, but I was in fear of doing that because Lt. Taylor had told me if I moved "suspiciously" that he'd push the stun belt button, (I had to sign

a document regarding that stun belt which I guess is in my DCC-DOC File).

6. When I arrived at DCC I eventually had what's called an "Intake Screening" with Nurse Carole Kozak. I immediately requested that she give me the medications that the transferring officers turned over to her but she refused. I explained what ordeal I had just went through and she still refused me any treatment whatsoever. She did, however, tell me to sign up for sick-call and she would refer me to see a doctor. She had knowledge of my whole problem(s) right then and there but, in effect, denied me the medical care I needed right there. All I wanted was my doctor-prescribed meds (Indocin and Motrin) but she refused citing the usual practice of CMS/DOC policy & procedure. (See Exhibit 3 as I stated in #4 of this declaration; it's all on Nurse Kozak's Intake Screening Report).

7. After I was placed in Building 21, on Maximum housing, nurses Kera and Carole Kozak continued to refuse to treat me and answer my numerous requests to see a doctor for effective pain management. (At

6

some point I was receiving Motrin but not the meds I was receiving in PDOC and they would not give me back my brace). I consistently told each and every nurse that delivered meds on my cellblock that I was in pain, I needed post-operative treatment, and I needed to see a doctor. They did not appreciate my persistence and even went as far as completely ignoring me. (See Exhibit #4 which reflects both a "Self Medication" sheet where I never signed for any self meds; and there's a "med administration" sheet which appears to have the letter "K" — For Kera — initialed on 9/21/05 and 9/22/05 and then no more... That's because I was being refused treatment as punishment for my persistence & demands to see a doctor).

8. According to my medical records, and my complaint, it wasn't until October 5th that I just happened to flag down Ms. Sherell Ott who I was told was the building doctor by other prisoners. But she's not a doctor but a P.A. or Nurse Practitioner (NP). Anyway, she stopped at my cell, heard me out, examined my hand and almost immediately ordered a strong narcotic pain medicine called Ultram. In Fact my

condition at that point was still so profound that Ms. Ott found it necessary to order narcotic pain meds. I had been complaining to nurses at least twice a day — on med drop off on my tier — but they were indifferent to my medical needs. (A copy of Ms. Ott's initial order is attached to this affidavit at Exhibit 5 along with (5) pages of the CMS Physicians order sheets where she kept me on the strong narcotic med Ultram from 10/5/05 — the first day I saw her — and she saw fit to order the narcotic a total of SIX times, her last order being 6/14/06. First time was for 30 days, then 30 more, and again 30 more, 30 more, and on 3/14/06 she ordered it for 60 days, and on 6/14/06 she ordered it for 30 final days, presumably thru July 14th, 2006. SEE where I placed "circles" around her name, the date, and the amount of days the Ultram was ordered). (Exhibit 5).

9. I was on this strong med (Ultram) for over nine (9) months due to pain. Note: Dr. Rodgers did order the Ultram when I dislocated my finger in May 2006 but she

8

was not my primary care provider, Ms. Ott was. In any event I was taken off the narcotics because they are addictive and I simply was on them for a long time. The pain and numbness in my hand/wrist/fingers still exist.

10. The Exhibit 5 Physician's Orders indicate where Ms. Ott ordered the EMG on 10/11/05. Attached to this affidavit is the EMG results by former "CN-MRI" Dr. Islam. The report indicates under "Conclusions" that I have bilateral median neuropathy, and the damage there is permanent and painful. (Exhibit 6 is the above report and Exhibit 7 is the memo for a Bottom Bunk due to my condition).

11. To my knowledge, DCC did not receive my entire medical file upon my arrival here... but they did receive an envelope with my medication in it (mentioned in #4 of this affidavit) and a document entitled "Transfer Health Information", before I left Camp Hill. This document is sent with the transferring officers who turned it over to Nurse

Carole Kozak. I'm submitting this document to the Court simply to establish the __Fact__ that Nurses Kozak and Kera and CMS staff — __knew__ all of the pertinent information about me and they were indifferent to my medical needs. They didn't even try to get me approved For a Bottom Bunk and the attached __Exhibit #8__ states I needed one. I wasn't officially given an assigned bottom bunk status until the end of February 2006 — Five months after my arrival. This __Exhibit #8__ proves that they had prior Knowledge of my recent operation and by them Failing to treat me they acted with malice, contempt and intent. That's the "custom" here.

12. I Filed/submitted numerous sick call requests during the time period in question here, but what I wish to establish For the purpose of this affidavit is a reason For my request For __injunctive relief__. Let __Exhibit #9__ reflect only two medical sick-call slips dated 9/25/05 and the other 9/24/05 where I'm still trying to be seen by medical staff.

What I need for the Court to observe is the note a medical staff person wrote:

"seen 10/26/05"

The slips were submitted a full month prior. My point is CMS has a constant practice/"policy that amounts to cruel and unusual punishment in violation of the Eighth Amendment and a custom of deliberate indifference to serious medical needs" (as quoted by this Honorable Court's 7/3/2007 Memorandum Opinion). (Exhibit #9).

13. For all intents and purposes regarding this case I will again add my original complaint (especially because of the grievances, letters, appeals to Paul Howard, etc). Also, I received a discovery response from Miss Erika Tross, Esq. (AG's office) and it had some grievance materials in it numbered "19844" for the medical Grievance and the other one is numbered "19399". I urge the Court to closely examine the responses in the rear of these newly submitted grievances to the Court. Form # 584 Grievance Form says in "response" that

11

the (7) day filing period expired. I submitted the grievance at 10 a.m. on 9/28/05. and the incident time was 9/21/05 after 2 p.m. So (7) days had not passed yet. In addition to this, the grievance wasn't even stamped "received" until 10/14/05.

It's a <u>Fact</u> that DDOC has a high prisoner death rate. This is a Factor, and a reason.

In the other grievance it's similar. I wrote that my problem — or "Date & Time of Medical Incident" — was <u>"Ongoing since 9/21/05 — present."</u> Every <u>moment</u> of <u>each</u> day leading to the date I submitted it on 10/11/05. The initial incident happened 9/21/05 but that incident was <u>ongoing</u>. The incident never stopped because my pain/suffering was still there. <u>This</u> Medical Grievance went unstamped "received" until 10/27/05 (submitted on 10/11/05). The grievance system is not only being ran by corrupt rogues but it is also a custom of deliberate indifference, violative of my Eighth Amendment rights.

Respectively, I'm putting these Facts in front of Your Honor at <u>Exhibit #10</u> for Grievance/Case # 19399 dated 9/28/05 . . . and <u>Exhibit #11</u> for Grievance/Case #19844 dated 10/11/05. (Exhibit #10 & #11). (Exhibit #12 is my original complaint containing grievances, letters,

appeals, etc.).

For the reasons stated in the brief submitted with this motion, the undisputed facts herein establish that the defendants — C.O. Lt. Taylor, Mark Forbes, Robert Durnan, Elizabeth "Betty" Burris, Chris Malaney, Warden Tom Carroll, Correctional Medical Services, Carole Kozak and Nurse Kera — were deliberately indifferent to my medical needs and in effect violated my Eighth Amendment rights to be free from cruel and unusual punishment.

Accordingly, at this Honorable Court's determination, I am entitled to summary judgment on my Eighth Amendment claims.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

July 8th, 2007
Lou G. Price, Sr. # 454309
DCC
1181 Paddock Rd.
Smyrna, De. 19977

Respectfully Submitted,

Lou G. Price, Sr.

Pro Se

13

In The United States District Court For The District
Of Delaware

Lou G. Price, Sr.
  Plaintiff,

 v.

C.O. Lt. Taylor et al.
  Defendant.

C.A. No. 05-871-SLR

Jury Trial Requested.

## Statement of Undisputed Facts
## That Entitle Plaintiff To Be Granted Summary Judgment

 Pursuant to this Court's Rules of
Civil Procedure, the plaintiff submits the
following list of undisputed facts that
entitle him to partial summary judgment
on his claims of deliberate indifference
and the denial of medical care, Eighth
Amendment violations to the Constitution.

1. On August 25th, 2005, while still in Pennsylvania DOC custody, the Plaintiff underwent carpal tunnel release surgery on his right hand.

2. The plaintiff, on September 21st, 2005, was released by PDOC and transferred to Delaware— DOC — Delaware Correctional Center by De. Dept. of Justice State Detectives Mark Forbes, Robert Durnan and a DOC—DCC employee/C.O.

3. It is a routine practice of transfer-ring agencies, including the DDOC officers, to shackle, handcuff, secure a chain around the waist and handcuffs, and then a black box around the handcuff chain, plus a 50,000 volt stun belt of men prisoners who are being driven from an out-of-state location/prison — such as was the case of the plaintiff Lou G. Price, Sr. on 9/21/05.

15

4. Before departing Camp Hill, Pa. Prison, the three transfer officers received plaintiff's medicine, a Transfer Health Information sheet/medical info, plaintiff's account holding ($25 m/o) and directly after that the three transfer officers re-armed themselves, secured plaintiff in the rear right seat of the vehicle and shackled him to something under the front passenger seat — then began the journey to Dcc - Doc.

5. Officers secured plaintiff's property box in the trunk including the "Thermoskin" right wrist brace they removed from plaintiff's right hand/wrist so they could handcuff him.

6. Plaintiff asserts, all three transfer officials were aware of plaintiff's recent surgery. (See #4 above).

16

7. No stops were made during the entire ride, not even a bathroom stop.

8. Plaintiff points out that the ride took approximately 3 to 3½ hours to complete.

9. Plaintiff was in restraints the entire trip.

10. Upon entry into the Dcc Booking and Receiving Room, per routine of the facility, the plaintiff was required to see a nurse for Intake Screening. That nurse was a CMS, Inc. employee by the name of Carol Kozak.

11. Carol Kozak referred plaintiff to see the health services provider (doctor).

12. Carol Kozak received the medication that was sent by PBOC for the plaintiff.

17

13. The plaintiff submitted at least two Sick-Call Requests... one 9/25/05 and another on 9/29/05 — both of which went unanswered until 10/26/05.

14. The plaintiff did not ever sign for Self-Medication between 9/21/05 and 10/6/05 according to enclosed medical records.

15. The plaintiff did not see Ms. Sherell Ott (NP) until October 5th, 2005.

16. Due to the routine application of the Smitu Rules and Regulations the plaintiff nor any prisoner is able to receive emergency medical treatment unless he/she is bleeding, having a heart attack or cannot breathe properly.

17. When plaintiff first saw Ms. Ott she ordered a strong narcotic medication named Ultram for him

due to his pain in his right wrist.

18. Ms. Ott immediately ordered a new wrist brace for the plaintiff.

19. Ms. Sherell Ott, to verify the plaintiff's exact condition(s), she ordered a consult for an EMG and that request was fulfilled. The plaintiff was taken to CNSMRI who diagnosed him with bilateral neuropathy-permanent damage in his right wrist.

20. Plaintiff asserts that Ms. Sherell Ott wrote a "Memo/Order" for plaintiff to be placed on a "Bottom Bunk assignment for his safety."

21. According to medical files of plaintiff's he has been in to see medical many, many, times for effective pain management. His pain is daily/nightly.

K

22. For reasons that are left unexplained, sick call requests sometimes take weeks to be answered — not just for the Plaintiff but for everyone.

23. Plaintiff filed two timely grievances — one on 9/28/05 and the "Medical" one on 10/11/05 — and both of them were wrongly dismissed and no hearings were granted. (The 7 Day Filing Periods had not expired).

24. Plaintiff points out that the transferring officers consciously chose to over-restrain Price. At best, they were not informed by their superiors that Plaintiff had had a recent carpal tunnel surgery and they did not come prepared with another method of restraint so they rolled the dice which was a reckless sadistic choice. They never even asked a PDOC official for any other

20

Kinds of restraints to borrow. They <u>chose</u>
to assault the plaintiff.

Respectfully,

Lou G. Price, Sr.

7/10/07

Lou G. Price, Sr. SBI # 454309
Dcc — Smyrna
1181 Paddock Rd.
Smyrna, De  19977

NME: Lou G. Price, Sr
SBI# 454309    UNIT 23
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



05 — 871 — SLR

Honorable Judge Sue L. Robinson
United States District Court
U.S. Courthouse
Wilmington De
19801