In The United States District Court For The District of Delaware

Lou G. Price, Sr.
  Plaintiff,

v.

C.O. Lt. Taylor et al.
  Defendant.

C.A. No. 05-871-SLR

Jury Trial Requested

FILED
JUL 17 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## Brief In Support of Plaintiff's Motion For Summary Judgment

### Statement of The Case

This is a § 1983 action filed by a prisoner at Delaware Correctional Center seeking damages, a declaratory judgment, and injunctive relief based on the use of over-restraints that was actually malicious abuse of a prisoner, deliberate indifference to the medical needs of a prisoner and the denial of necessary medical care — violations of the protections afforded and provided by the Eighth Amendment

22

of the United States Constitution.

In this motion the plaintiff seeks summary judgment on his claims arising from the Eighth Amendment violations.

## Statement of Facts

As set forth in the accompanying declaration of the plaintiff, Lou Garden Price, he was in the early stages of healing from a carpal tunnel release surgery that took place at Holy Spirit Hospital while he was still in PDOC custody on 8/25/05. On September 21, 2005 he was released into the custody of two De. State Detectives and one DDOC employee named Lt. Taylor, (HE believes). Instead of using another method of restraint they chose to ① handcuff the plaintiff "extremely tight, ② a black box was placed over the handcuffs chain, ③ a chain was placed around my waist and connected to the handcuffs via a "loop" that fastened through the black box— that chain was pulled tight and the slack was locked with a master lock and ④ on top of that, a black 50,000 volt stun belt was

23

placed around the plaintiff and secured to his wrists with Velcro strap handcuffs."

Price, in spite of these three officers being insensitive to the fact that he was already suffering from an unhealed surgery, Price kept calm although he was upset. If the plaintiff could physically show the Court what the 50,000 volt stun belt did as far as securing his movement and restraining him went, then the picture would be crystal clear. Plus, Price had on leg irons, he was leg-strapped under the seat of the car, the seat belt was fastened tightly, the chain, cuffs, black box.... Price was suffering and suffocating and these three officials intentionally created these feelings of pain and misery. They knew what they were doing. Price never had an escape history or a violent disciplinary history — not nary a reason to make those men believe for one second that he would attempt escape. Price has a murder conviction, true, but the United States Constitution does not allow

24

cruel and unusual punishment no matter what the "excuse" is.

## Argument
### Point #1

The Conduct of All Three Transferring Officials Denied the plaintiff His Eighth Amendment Rights Because of Their Deliberate Indifference To Plaintiff's Serious Medical Needs.

To establish or state an Eighth Amendment violation Price "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); accord White v. Napoleon, 897 F.2d 103, 109 (3d Circuit 1990). Price (or plaintiff) must demonstrate:

1). He had a serious medical need

and 2). The defendant was aware of this need and was deliberately indifferent to it. See West v. Keve, 571 F.2d 158, 161 (3d Circuit 1978); also see Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Circuit 1987). Either actual intent or

25

recklessness will afford an adequate basis to show deliberate indifference (see Estelle, 429 U.S. at 105).

First, Price evidenced the conduct of the three officers by showing the Court <u>Exhibit 2</u> - a copy of DDOC's 537-A Confiscated Property Form which indicated that a Thermoskin Brace was confiscated from him by the transferring officers. Taken off his wrist.

Second, Price showed the Court <u>Exhibit #3</u> - "Intake Screening Report" which showed the pain meds given to the transit officers by Camp Hill officials. And <u>Exhibit 8</u> which is "Transfer Health Information" sheet which indicates plainly that Price had just underwent "carpal tunnel repair 8/25/05" on line 6.

So if plaintiff's Thermoskin Brace was confiscated, which it was, then it was the extreme pressure from the restraints (cuffs) that caused permanent damage to Price's wrist. And it's a <u>fact</u> that Price was indeed handcuffed <u>and</u> the three transit officers failed to utilize any other mode of restraint. Taking Price's Brace from him

26

and just slapping on steel handcuffs, a black box, and a tight chain and lock (plus a tight 50,000 volt stun belt) is clear evidence of deliberate indifference to serious medical needs because the acts described fall directly into the Estelle interpretation of "sufficiently harmful" mentioned above.

Furthermore, Price went on to demonstrate that the defendants were aware of his serious need, were indifferent to it (deliberately so) — not to forget, they "knew" Price had the need from the outset. Their actions after all that was recklessness, or actual intent because, after all, Price was forced to travel 3 to 3½ hours just like he described, and that's abuse. The Eighth Amendment forbids officials to do that. There's absolutely no excuse why they did.

### Point II

Defendants CMS, Nurses Kera and Carol Kozak are Liable For Their Eighth Amendment Violations As Well.

27

Upon plaintiff's arrival at DCC, Nurse Carol Kozak performed the "intake screening report" (see Exhibit #3). Sticking to the facts, Nurse Kozak could not have been on better notice that the plaintiff was in need of medical attention/care. She would not give him his doctor-prescribed medicine to alleviate the pain he was in. That's why Ms. Kozak referred Price to see the doctor — that was noted on #28 page 4 of the <u>intake screening report</u> at <u>Exhibit 3</u>. She had refused to do anything more than the intake, citing that the usual practice of CMS/DOC policy was to put in a sick-call slip. But the plaintiff submitted evidence that along with the grievance procedure, the sick-call policy is also a fluke. One men and women, under CMS/DOC care, are dying from, (see <u>Exhibit 9</u>).

The plaintiff was housed in Building #21 — the Maximum unit but he still saw Nurses Kozak and Kera very frequently. Due

28

to plaintiff persistently requesting/demanding to see a doctor for effective pain medicine the two nurses ignored him and left him to suffer. Plaintiff did not receive nor sign for any self medication (or "KOP" - Keep on Person) because these nurses refused to treat him. (See Exhibit #4 which suggests that plaintiff was given meds for apprx 2 days but then there's a "self medication" chart that requires plaintiff's signature yet he never signed it at that time which certainly indicates that these two nurses were punishing Price by refusing him treatment, sick-call, or to see a doctor).

In fact plaintiff did not see a doctor until October 5th, 2005. Ms. Ott, who's a Nurse Practitioner or P.A. examined Price's hand/wrist and immediately prescribed narcotic pain killers, she ordered an EMG to be performed and she also ordered a new right hand splint. Plaintiff was diagnosed by an outside specialist with permanent bilateral damage inside of my wrist which is a painful finger-numbing

29

nerve condition plaintiff contends was caused by the defendants in this action. <u>All of them.</u>

It is readily evident that Price was not only denied medical care but Nurse Kozak and Nurse Kera were deliberately indifferent to his serious medical need. The seriousness prong of the Eighth Amendment can be demonstrated by showing that the need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Monmouth County Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir 1987), (quoting <u>Pace v. Fauver</u>, 479 F. Supp. 456, 458 (D.N.J. 1979). Moreover, "Where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." <u>Id.</u>

Plaintiff's serious medical need was certainly one diagnosed by doctors — here in Delaware as well as in Pennsylvania. Not only that but as soon as Sherell Ott saw and examined plaintiff, she

30

immediately thereafter ordered <u>strong narcotic painkillers</u> for him. Plaintiff has consistently stated that the refusal of prompt medical care by CMS employees following CMS policy was, or could have been, partially responsible for the permanent damage to his wrist that was verified by an outside EMG specialist. And even after seeing Ms. Ott fifteen days after his arrival at DCC... plaintiff contends that the EMG was done approximately three (3) months after his arrival (See <u>Exhibit 6</u>). This leads to one of the primary reasons why Price included Chris Malaney, Elizabeth Burris and Warden Carroll in this action, (Delay).

But first, as to the second prong "an official's denial of an inmates reasonable requests for medical treatment (See Exhibit 9, 10 and 11) constitutes deliberate indifference if such denial subjects the inmate to undue suffering or a threat of tangible residual injury. See <u>Monmouth</u>, 834 F.2d at 346. Deliberate indifference may

31

also be present if necessary medical treatment is delayed for non-medical reasons, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment, See Id. at 347.

The CMS nurses' denial of plaintiff's repeated requests for treatment definitively barred his access to a physician capable of evaluating his medical need. By the time Price had the EMG performed... it was too late to do anything. He had been complaining that he was injured by the transit officials all along and the CMS nurses — following CMS/DOC policy and being the usual contemptuous & corrupt organization they're now established as — knew it and tried to bury the problem.

### The Requisite Mental State

"The official must know... of and disregard... an excessive risk to inmate health and safety; the official must be both aware of facts from which the

32

inference can be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan 511 U.S. 825, 837 (1994).

The transit officials, the CMS nurses, Chris Malaney and DCC Administration fit perfectly inside the Farmer v. Brennan framework. They knew, they disregarded, they delayed.

Thus, while a plaintiff must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the official had knowledge of the risk through circumstantial evidence and "a fact finder may conclude that an ... official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842

Plaintiff has continuously contended that although the substantial risk may not have been obvious from sight alone, he repeatedly pleaded to the nurses,

33

wrote grievances, and letters/appeals... and he was still denied proper/adequate care.

### Warden Tom Carroll, Elizabeth Burris, Chris Malaney

Although Warden Carroll, Ms. Burris and Chris Malaney did not commit the Eighth Amendment violations directly they did become responsible for them when they failed to intervene and correct them in the course of their supervisory responsibilities. Grievance Policy 4.4 — specifically Medical Grievances — are placed in the warden's hands for screening and/or his designee. A supervisor who learns of a constitutional violation through a report or appeal may be held liable for failing to correct it. Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986). Plaintiff emphatically contends that wardens and other high-level prison

34

officials have the duty to conduct at least a minimal investigation whenever confronted with evidence of Eighth Amendment violations and they may be held liable for failing to perform this duty.

It cannot be argued for one second that the Warden and Operational Manager/Dep. Warden Burris did not learn of the abuse and denial of medical care in this case. Plaintiff is a chronic writer as witnessed by the trails and trails of paper. Chris Malaney and Ms. Burris delayed arranging transport for the EMG (Exhibit 6 which reflects January of 2006 when the EMG was done so it was actually apprx. four months). Price arrived to DCC 9/21/05.

In closing, deliberate indifference by supervisory officials to inmates' constitutional rights is sufficient to establish liability under 42 U.S.C. § 1983. See Aswegan v. Bruhl, 965 F.2d 676, 677 (8th Cir. 1992); Walker v. Norris,

35

917 F.2d 1449, 1456 (6th Cir. 1990).

### Conclusion

Plaintiff's sick call requests and grievances (Exhibits 10 & 11) proves that Chris Malaney, Warden Carroll and Betty Burris knew what was and had gone on in this case. They had "jobs to do and did not do it," and their failure to do those jobs was so likely to result in the violation of Price's constitutional rights that it would establish deliberate indifference on their part.

Plaintiff prays that for the foregoing reasons, this Honorable Court should grant summary judgment on liability to the PLAINTIFF on his Eighth Amendment claims. The actual amount of damages due to the plaintiff must be determined at trial.

Respectfully Submitted,

Jo G. Price, Sr #454389
1181 Paddock Rd.
Smyrna, De 19977

36