**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LOU GARDEN PRICE, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-871-SLR |
| | ) | |
| CORRECTIONAL MEDICAL SERVICES, | ) | TRIAL BY JURY DEMANDED |
| DCC WARDEN TOM CARROLL, C.O. | ) | |
| LIEUTENANT TAYLOR, CAROLE | ) | |
| KOZAK, MARK FORBES, ROBERT | ) | |
| DURNAN, CHRIS MALANEY, BETTY | ) | |
| BURRIS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT,
CORRECTIONAL MEDICAL SERVICES, IN SUPPORT OF ITS MOTION FOR
<u>SUMMARY JUDGMENT</u>**

Defendant, Correctional Medical Services, Inc., through its undersigned counsel, hereby

respectfully moves this Honorable Court to enter the attached Order, granting defendant's Motion

for Summary Judgment and, in support thereof, aver as follows:

**I.    STATEMENT OF FACTS AND PROCEDURAL POSTURE**

Plaintiff, a prisoner presently incarcerated at Delaware Correctional Center ("DCC"),

filed a Complaint under 42 U.S.C. § 1983, on December 15, 2005. D.I. 2. Among others,

Correctional Medical Services ("CMS"), Nurse Carol and Nurse Kera were named as defendants.

CMS is a private corporation that has provided medical care to Delaware inmates since July 1,

2005.[1]  Plaintiff amended his Complaint on February 6, 2006. D.I. 11. By Memorandum Order

---

[1] Prior to July 1, 2005, CMS provided medical care to Delaware inmates from July 1, 2000 until June 30, 2002.

dated March 1, 2006, the Court dismissed without prejudice plaintiff's claims against CMS, as frivolous.  D.I. 12.

Plaintiff filed a Second Amended Complaint on April 12, 2006.  D.I. 13.  Among others, the inmate listed CMS, Carol (Nurse) and "Kera" (Nurse) and DCC Medical Administrator, Chris Malaney as defendants.  D.I. 13 at ¶ ¶ 6-7.  The inmate explains that CMS is a "contracted medical provider", while Nurses Carol, Kera, and Ms. Malaney are employees of CMS.[2]  *Id.* The inmate further claims that upon arrival at DCC on September 21, 2005, Kozak and Nurse Kera, intentionally failed to administer doctor-prescribed pain-killer medications which plaintiff had received after his carpal tunnel syndrome.  D.I. 13 at ¶ 35.  Plaintiff also claims that the two CMS nurses, knowing that he was suffering, refused him prompt medical treatment from September 21, 2005 (when he arrived at DCC) until October 6, 2005, when he finally saw a doctor.  *Id.*   When defendant did see a doctor, painkillers were again prescribed for him.  *Id.*  In December of 2005, plaintiff was brought to an outside specialist and given an EMG which showed permanent damage to his wrists.  *Id*. at ¶ 21.  Plaintiff contends that Kozak justified the lack of immediate care by asserting that she was following the Medical Services and Sick-Call Policy ("sick-call policy") in part VIII (A)-(D) of the Inmate Housing Rules for Medium High Security ("Inmate Housing Code").  D.I. 51 at 18.  According to plaintiff, the Inmate Housing Code provides emergency sick call rights only if an inmate is bleeding, having a heart attack, or cannot breath properly.  *Id*. at 19-20.

Plaintiff claims that this policy promulgates cruel and unusual punishment by denying prisoners immediate medical care simply because they are not bleeding, having a heart attack, or

---

[2] Although plaintiff has made allegations against Christine Malaney, Nurse Carole Kozak, and Nurse Kera the docket does not reflect that service of process has been perfected upon defendants.

having trouble breathing.  *Id*.  Plaintiff points out that this policy resulted in him suffering

excruciating pain for weeks without a physician's care.  *Id*.  Plaintiff asserts that the Inmate

Housing Code, and specifically the sick-call policy within, constitute both a CMS policy that

amounts to cruel and unusual punishment in violation of the Eighth Amendment and a custom of

deliberate indifference to serious medical needs.  *Id*. at 17-22.

## II.    STANDARD OF REVIEW

A court may grant summary judgment only if there is no genuine issue as to any material

fact and if the moving party is subject to judgment as a matter of law.[3]  A dispute is "genuine" if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]  A

fact is "material" when it "might affect the outcome of the suit under the governing law."[5]

Disputes over facts which are irrelevant or unnecessary will not preclude a grant of summary

judgment.[6]

The initial burdens of informing the court of the basis for a motion for summary

judgment and identifying the portions of the record which demonstrate the absence of a genuine

issue of material fact fall on the moving party.[7]  Once the moving party can satisfy these initial

burdens, Rule 56(e) states that the nonmoving party "may not rest upon the mere allegations or

denials of his [or her] pleadings, but his [or her] response…must set forth specific facts showing

---

[3] Fed. R. Civ. P. 56(c).
[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[5] *Id*.
[6] *Id*.
[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

that there is a genuine issue for trial."[8]  However, any reasonable inferences that can be drawn

from the record must be viewed in the light most favorable to the party opposing the motion.[9]

### III.    LEGAL ARGUMENTS

### A.    CMS CANNOT BE LIABLE FOR CONSTITUTIONAL CLAIMS ASSERTED BY PLAINTIFF

#### 1.    CMS POLICIES DID NOT CAUSE THE CONSTITUTIONAL VIOLATION AT ISSUE

In order to be liable in a civil rights action, a defendant must have personal involvement

in the alleged wrongs.[10]  "Personal involvement" may be demonstrated through "allegations of

personal direction or of actual knowledge and acquiescence."[11]  These allegations, however,

must be made with appropriate particularity.[12]  CMS, a private corporation, may only be held

liable for a policy or custom that demonstrates deliberate indifference to plaintiff's serious

medical needs.[13]

The crux of plaintiff's Complaint against CMS is that it instituted policies and procedures

which impeded plaintiff's ability to receive appropriate medical treatment.  Specifically, plaintiff

alleges that the Medical Services and Sick-Call Policy in part VIII (A)-(D) of the Inmate

Housing Rules for Medium High Security provided emergency sick call rights only if an inmate

was bleeding, having a heart attack, or could not breathe properly.  D.I. 51 at 18.  This policy,

plaintiff contends, resulted in him suffering excruciating pain for weeks without a physician's

care.  *Id*. at 19-20.  Plaintiff asserts that the Inmate Housing Code, and specifically the sick-call

---

[8] *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985)(citing Fed. R. Civ. P. 56(e)), *cert. denied*, 474 U.S. 1010 (1985).
[9] *Sorba v. Pennsylvania Drilling Co., Inc.*, 821 F.2d 200, 202-03 (3d Cir. 1987), *cert. denied*, 484 U.S. 1019 (1988).
[10] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)(citations omitted).
[11] *Id*.
[12] *Id*.
[13] *Miller v. Correctional Medical Systems, Inc.*, 802 F.Supp. 1126 (D. Del. 1992), *citing Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

policy within, constitute both a CMS policy that amounts to cruel and unusual punishment in violation of the Eight Amendment and a custom of deliberate indifference to serious medical needs. *Id.* at 17-22.

By Memorandum Opinion dated July 3, 2007, the Court held:

[i]n order for CMS to be liable, plaintiff must provide evidence that there was a relevant CMS policy or custom, and that the policy caused the constitutional violation they allege. *See Bd. Of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997).

The only basis for plaintiff's belief that the Inmate Housing Rules were a CMS policy was that it was entitled "Medical Services" or "MS". September 21, 2007 Deposition of Lou Garden Price, Sr., at 164, attached hereto as Exhibit "A". Plaintiff believed that it "just takes out the C", meaning that it left out the "C" in "CMS". *Id.* Plaintiff's belief is insufficient, as a matter of law, to survive summary judgment. In fact, the CMS policy and procedure addressing care for an acute illness or an unexpected health need, consistent with national guidelines, is filed under seal.[14] D.I. 114 . Therefore, plaintiff's claim that there are emergency sick call rights only if an inmate was "bleeding, having a heart attack, or could not breathe properly" is inaccurate. More importantly plaintiff is unable to sustain his burden of proof that this CMS policy caused the constitutional violation at issue.

There is no evidence that the Inmate Housing Rules,[15] or anything contained therein, were in fact the policy or procedure enacted by CMS to address "emergency sick call rights". Moreover, CMS has provided the Court with its policy under seal. Plaintiff can not provide any

---

[14] Aside from this policy, plaintiff testified that he did not take issue or have a problem with any other policies or procedures. Exhibit "A" at 164-165.
[15] The Inmate Housing Rules were filed by State Defendants in response to plaintiffs' discovery, and are Bates numbers 285-336. D.I. 88.

evidence that the relevant CMS policy caused the alleged constitutional violation,[16] therefore,

CMS cannot be liable to plaintiff as a matter of law.

> **2.    THERE IS NO CONDUCT THAT DEMONSTRATES
> DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS
> MEDICAL NEEDS[17]**

In the context of medical care, an act of a prison official only becomes a constitutional

violation when it results from the "deliberate indifference to a prisoner's serious illness or

injury."[18]  Thus, *Estelle* requires plaintiff to satisfy a two-prong test in order to impose liability

under § 1983: i) the prisoner's medical needs must be serious; and there must be ii) deliberate

indifference on the part of prison officials.[19]  The *Estelle* court has clarified this standard in that:

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an
> unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of
> mankind."  Thus, a complaint that a physician has been negligent in diagnosing or
> treating a medical condition does not state a valid claim of medical mistreatment under
> the Eighth Amendment.  Medical malpractice does not become a constitutional violation
> merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner
> must allege acts or omissions sufficiently harmful to evidence deliberate indifference to
> serious medical needs.  It is only such indifference that can offend "evolving standards of
> decency" in violation of the Eighth Amendment.[20]

The seriousness of a medical need may be demonstrated by showing that the need is "one

that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay

person would easily recognize the necessity for a doctor's attention."[21]  Moreover, "where denial

---

[16] *See Bd. Of County Comm'rs of Bryan County, Okla.*, 520 U.S. at 404.
[17] At all times, CMS maintains it cannot be liable to plaintiff under a theory of *respondeat superior.   See Monell*, 436 U.S. at 691.  To the extent that plaintiff seek to hold CMS liable under such a theory, CMS is entitled to judgment in its favor, as a matter of law.
[18] *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).
[19] *Id.*
[20] *Id.* at 105-106.
[21] *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)(quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979)).

or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious."[22]

An official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects the inmate to undue suffering or a threat of tangible residual injury.[23] Deliberate indifference may also be present if necessary medical treatment is delayed for non-medical reasons, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment.[24] However, an official's conduct does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Specifically, "the official [must] know … of and disregard … an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[25] Plaintiff may demonstrate the official had knowledge of the risk through circumstantial evidence and "a fact finder may conclude that a[n] …official knew of a substantial risk from the very fact that the risk was obvious."[26] Plaintiff has failed to produce any medical evidence or a physician's diagnosis to support his claim of a serious medical need.

When the inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should be measured "by reference to the *effect* of delay

---

[22] *Id.*

[23] *See Monmuoth*, 834 F.2d at 346.

[24] *See id.* at 347.

[25] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[26] *Id.* at 842; *See also Beyerbach v. Sears*, 49 F.3d 1324, 1325-1326 (8th Cir. 1995)(insufficient evidence of objective seriousness when no medical evidence that the delay in treatment produced any harm); *See also Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994)(insufficient evidence of serious medical need when the medical need claimed is based on bare assertion of inmate).

in treatment."[27]  "An inmate who complains that delay in medical treatment rose to a

constitutional violation must place *verifying medical evidence* in the record to establish the

detrimental effect of delay in medical treatment to succeed."[28]  In *Sherrer v. Stephens*,[29] the court

concluded that an inmate failed to satisfy the objective component of the test because the inmate

failed to submit "sufficient evidence that defendants ignored 'an acute or escalating situation' or

that delays adversely affected his prognosis, given the type of injury in this case."[30]

Plaintiff has alleged he experienced a delay in treatment that amounted to a constitutional

deprivation.  Exhibit "A" at 243-245; D.I. 13 at ¶ 35.[31]  Plaintiff, however, has failed to present

any "verifying medical evidence,"[32] that anyone "'ignored an acute or escalating situation' or that

delays adversely affected his prognosis, given the type of injury in this case."[33]  Plaintiff fails to

allege in the sick call slips, dated September 25, 2005 and September 29, 2005, that he was not

receiving appropriate medical treatment or that he was not receiving his pain medication.  Sick

Call Slips dated September 25, 2005 and September 29, 2005, attached hereto as Exhibit "B".  In

addition, plaintiff has proffered no other evidence to support his theory that there was a delay in

medical treatment.  Nor has he proffered any evidence that he actually made a complaint that he

was not receiving his pain medicine from September 21, 2005 until October 6, 2005.  Exhibit

"A" at 196-203.  Plaintiff testified that he had access to sick call slips upon his arrival at DCC.

*Id.* at 179, 192.  He was not denied appropriate medical treatment.

---

[27] *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994);  *See also Wilson v. Seiter*, 501 U.S. 294, 303 (1991)(harmfulness of the deprivation to the prisoner is part of objective inquiry in an Eighth Amendment claim).

[28] *Hill*, 40 F.3d at 1188 (emphasis added).

[29] 1994 U.S. App. LEXIS 33133 (8th Cir. Nov. 23, 1994).

[30] *Id.* at *2 (evidence insufficient where treatment for a broken finger was delayed, but ice, painkillers, and x-rays eventually given)(quoting *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990)(other citation omitted).

[31] Plaintiff claims that the permanent impairment to his right hand/wrist was the result of the excessive force used by the officers who transferred him to the DCC from Camp Hill.  However, plaintiff has offered no report or even verbal opinion from any medical professional supporting his theory that he suffered a permanent impairment.

[32] *Hill*, 40 F.3d at 1188.

[33] *Sherrer*, at *2.

The evidence in the record establishes the contrary, that plaintiff was in fact receiving medication and treatment from September 21, 2005 until October 6, 2005.  The Medication Administration Records for both September 2005 and October 2005 indicate that plaintiff was receiving medication, including, but not limited to, Tenormin, Zantac, Motrin, Seroquel and Sinequan.  See September 2005 and October 2005 Medication Administration Records attached hereto as Exhibit "C".  Moreover, even assuming that there was a two to three day delay in plaintiff's receipt of Motrin, as testified by plaintiff, that delay does not amount to deliberate indifference on the part of CMS.[34]

Plaintiff has provided no evidence that the alleged delay exposed him to a risk of serious damage to his future health or left a lasting effect.[35]  Nor has he presented any "verifying medical evidence … that defendants ignored an acute or escalating situation or that delays adversely affected his prognosis."[36]  Plaintiff's Eighth Amendment claim based upon the alleged delay in treatment must be dismissed since he has failed to present any evidence that the alleged delay in treatment in fact caused any sort of permanent damage.   The requirement of a knowing disregard for a finding of deliberate indifference cannot be met.  Therefore, CMS' Motion for Summary Judgment should be granted.

The requirements for a finding of deliberate indifference have not been met.  Plaintiff has not shown that CMS knew of a substantial risk to his health or safety.  In addition, plaintiff has not presented any verifying medical evidence that CMS ignored an acute or escalating situation

---

[34] *See Ayala v. Terhune*, 195 Fed. Appx. 87, 91 (3d Cir. 2006).

[35] *Farmer*, 511 U.S. 825, 828 (1994)(questioning whether a prison official's actions exposed the prisoner to a sufficiently substantial risk of serious damage to his future health); *Gaudreault v. Salem*, 923 F.2d 203, 208 (1st Cir. 1990)(stating that the effect of the delay of treatment may determine the seriousness of the delay).

[36] *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995)(quoting *Beyerbach*, 49 F.3d at 1326; *See also Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)(finding that inmate's failure to provide verifying medical evidence in the record "to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs"); *Givens*, 900 F.2d at 1233.

or that the alleged delay in treatment, specifically the delay in receipt of pain medication, caused permanent damage to his wrists. Thus, the Court must find that plaintiff's constitutional rights have not been violated and no genuine issue of material fact exists on the issue. CMS is entitled to judgment as a matter of law.

### B.    PLAINTIFF'S STATE LAW CLAIMS MUST FAIL

To the extent that plaintiff's claims fall within the definition of "Medical Negligence" pursuant to 18 *Del. C.* § 6801(7), expert testimony must be provided to survive a motion for summary judgment. According to the statute, "'[m]edical negligence' means any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient."[37] Moreover, the plaintiff bears the initial burden of presenting expert medical testimony on both the deviation from the applicable standard of care and causation.[38] As this Court explained in *McCusker*,

> Consistent with the plain language of the [Medical Malpractice] Act, 'the production of expert testimony is an essential element of a plaintiff's medical malpractice case and, as such, is an element on which he [] bears the burden of proof.' Summary judgment is proper when a plaintiff fails to adduce any expert medical testimony in support of his allegations of negligence under the Act.[39]

The plaintiff has failed to provide any expert testimony on either an alleged deviation in the standard of care or causation. As such, to the extent plaintiff states a claim for state law medical negligence, CMS is entitled to summary judgment as a matter of law on these claims.

### C.    PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

---

[37] 18 *Del. C.* § 6801.
[38] *McCusker v. Surgical Monitoring Assocs.*, 299 F.Supp.2d 396, 398 (D. Del. 2004)(citing *Burkhart v. Davies*, 602 A.2d 56 (Del. 1991)(further citations omitted).
[39] *Id*. (citation omitted).

The Prison Litigation Reform Act of 1996 mandates a prisoner exhaust his administrative remedies prior to bringing an action pursuant to Section 1983.[40]  42 U.S.C. §1997e (a) provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available to him are exhausted.

"Prison conditions" have been defined to include the environment in which the prisoners live, the physical conditions of that environment and the nature of the services provided therein.[41]

The Delaware Department of Corrections has established administrative procedures that an inmate must follow to file a medical grievance.[42]  An inmate must file a grievance with the Inmate Grievance Chairperson (IGC) who then forwards it to the medical staff for review.  If action needs to be taken, the medical staff is required to attempt an informal resolution of the grievance with the inmate.  If the grievance cannot be resolved informally, the grievance is forwarded to the Medical Grievance Committee to conduct a hearing.  If the medical grievance hearing decision does not satisfy the inmate, the inmate may complete a Medical Grievance Committee Appeal Statement which is then submitted to the Bureau Grievance Officer.[43]   The Bureau Grievance Officer will recommend a course of action to the Bureau Chief of Prisons, who renders the final decision.[44]

Plaintiff complains of prison conditions which under 42 U.S.C. §1997e(a) requires him to exhaust the administrative remedies available to him.  Plaintiff claims that on 10/11/05 a *Medical*

---

[40]  *Nyhuis v. Reno,* 204 F.3d 65, 67 (3rd Cir. 2000); *see also Booth v. Churner,* 206 F.3d 289, 294-95 (3d Cir. 2000) *cert. granted,* No. 99-1964, 2000 WL 798208 (Oct. 30, 2000) (§1997e (a) is applicable to all inmate claims except those challenging the fact or duration of confinement).
[41]  *Booth,* 206 F.3d at 291.
[42]  *Frink v. Williams*, 2005 U.S. Dist. LEXIS 21043 ( D.Del. 2005).
[43]  *Id.*
[44]  *Id.*

Grievance was sent to Warden Tom Carroll, but it was "ignored". D.I. 13 at 39.[45]  According to

the inmate's Second Amended Complaint, his medical grievance concerning CMS was filed[46],

but was never heard.  Taking plaintiff's allegations as true, then, it is clear that plaintiff has not

pursued his administrative remedies to a final decision, nor does he allege that he has done so.[47]

At best, plaintiff has only met the first step of the IGP by filing a grievance. Therefore, plaintiff

has failed to exhaust his administrative remedies prior to filing his action.[48]

    42 U.S.C. §1997e (a) should be applied without exception to promote the policy behind

the exhaustion requirement, which is to allow the Department of Corrections an opportunity to

discover and correct mistakes and conserve judicial resources.[49]  At the time this action was

filed, several procedural steps remained under the Department of Corrections Inmate Grievance

Procedure that were not completed, thereby obviating any opportunity to discover and correct

any alleged mistakes, and wasting judicial resources.  The need to exhaust administrative

remedies is a necessary requirement to avoid wasting costly judicial resources.  Therefore,

plaintiff's Second Amended Complaint against CMS must be dismissed as he has failed to

exhaust his administrative remedies as mandated by the Prison Litigation Reform Act of 1996.

---

[45]  However, in the same Second Amended Complaint, plaintiff asserts that he was seen by Dr. Ott on
October 6, 2005, D.I. 13 at ¶ 35(b), and was even sent for an outside consultation with Dr. Islam for an EMG in
December, 2005.  D.I. 13 at ¶ 35 (d).
[46]  D.I. 2.
[47]  *See Frink*
[48]  *Id.*
[49]  *O'Neil v. Kearney, et al.*, C.A. No. 99-849-SLR,   Memorandum Order (Robinson, J. November 6, 2000)
(citing *Nyhuis v. Reno*, 204 F.3d 65, 75 (3rd Cir. 2000)).

**IV.     CONCLUSION**

Based upon the foregoing, Defendant, Correctional Medical Services, Inc., moves this

Honorable Court to dismiss all constitutional claims, along with the state law medical

negligence, pursuant to Federal Rule of Civil Procedure 56.

MARSHALL, DENNEHEY, WARNER,
COLEMAN AND GOGGIN

BY:     /s/ Kevin J. Connors
        KEVIN J. CONNORS, ESQUIRE,(DE ID # 2135)
        1220 N. Market Street, 5th Floor
        P.O. Box 130
        Wilmington, DE  19899-0130
        (302) 552-4302
        Attorney for Defendant, Correctional Medical
        Services

DATED:  November 8, 2007

15/550947.v1